In re Andrew AN–TZE CHENG and Yvonne E–Fung Cheng, Debtors.

Andrew An–Tze Cheng and Yvonne E–Fung Cheng, Appellants,

v.

K & S Diversified Investments, Inc., Appellee.

BAP No. CC–03–1352–KMaB.

Bankruptcy No. SA 02–17395–JR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 22, 2004.

Filed March 31, 2004.

Rebekah L. Parker, Law Office of Rebekah L. Parker, Los Angeles, CA, for Andrew and Yvonne Cheng.

Adam A. Burton, Burton, Samini & Ghaderi, LLP, Costa Mesa, CA, for K & S Diversified Investments, Inc.

Before KLEIN, MARLAR and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This appeal deals with constraints on remedies for judicial estoppel in bankruptcy. Under the equitable principle that a court will not do inequity in the name of equity, we hold that the debtor's different capacities, as debtor and as debtor in possession performing duties of the trustee, must be considered when fashioning a judicial estoppel remedy and that a remedy must be calibrated so as not to harm bystanders. Thus, we REVERSE and REMAND for further proceedings.

### Facts

Appellants, Andrew An–Tze and Yvonne E–Fung Cheng, are chapter 11 debtors in

possession who persuaded the court to avoid a judicial lien as impairing their homestead exemption.

The lien avoidance depended on the truth of the Chengs' assertion that appellee K & S Diversified Investments ("K & S") had a $268,045.17 secured claim as stated in its proof of claim. Under the Chengs' numbers (home value $534,000.00; $75,000 exemption; $261,690.12 other liens), the judicial lien could not have been avoided in full if the K & S claim was less than $197,309.88.

The Chengs' lien avoidance motion was filed January 29, 2003. Five days later, on February 3, they filed an objection to the K & S claim to the extent it exceeded $156,000.

The premise of the claim objection was that the original owners of the (later-assigned) K & S claim had filed a $151,000 proof of claim on the same debt one year earlier in the Chengs' prior bankruptcy case. Thus, the Chengs were asserting that K & S inflated the claim by about $112,000.

K & S responded by moving for summary judgment solely on a theory that judicial estoppel rendered its claim incontestable.

The court, in the name of protecting the bankruptcy system's integrity from the "duplicity and fraud on the court" inherent in having used a value for a claim in a motion to avoid lien that they believed to be inflated, judicially estopped the Chengs from contesting the amount of the K & S claim. They appealed.

### Jurisdiction

The bankruptcy court had jurisdiction per 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1).

### Issues

I. Whether the facts warrant judicial estoppel.

II. Whether a judicial estoppel remedy must be fashioned so as to avoid unnecessary harm to third parties.

### Standard of Review

We review summary judgment de novo. *Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 166 (9th Cir. BAP 1999). Imposition of judicial estoppel is reviewed for abuse of discretion. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). It is an abuse of discretion to apply an erroneous view of law or a clearly erroneous assessment of evidence. *Cannery Row Co. v. Leisure Corp. (In re Leisure Corp.)*, 234 B.R. 916, 920 (9th Cir. BAP 1999).

### Discussion

Judicial estoppel analysis is a two-step process. First, the facts must warrant judicial estoppel. Second, a remedy must be available that does not needlessly punish the innocent.

### I

Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one form of which is preclusion of inconsistent positions that estops a party from gaining an advantage by taking one position and then seeking another advantage from an inconsistent position. *Alary Corp. v. Sims (In re Assoc'd Vintage Group, Inc.)*, 283 B.R. 549, 565–66 (9th Cir. BAP 2002); *accord, New Hampshire v. Maine*, 532 U.S. 742, 749–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); *Davis v. Wakelee*, 156 U.S. 680, 685, 15 S.Ct. 555, 39 L.Ed. 578 (1895) (Bankruptcy Act of 1867); *Hamilton*, 270 F.3d at 782–85; *Rissetto v. Plumbers & Steamfitters Local*

*343*, 94 F.3d 597, 600–01 (9th Cir.1996); 18B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4477 (2002) ("WRIGHT, MILLER & COOPER").

### A

Modern judicial estoppel doctrine is still amorphous and has been described by Professor Cooper as "not so much a single doctrine as a set of doctrines that have not emerged into fully coherent theory." WRIGHT, MILLER & COOPER § 4477, at p. 551. This observation is confirmed by encyclopedists who distinguish true equitable estoppel of inconsistent positions in which the victim has relied to its detriment from quasi-estoppel in which, regardless of reliance by parties, the conscience of the court is repelled by the inconsistency. 28 AM. JUR. 2D *Estoppel & Waiver* §§ 33–34 & 74–75 (2000).

There are three general approaches to judicial estoppel: (1) requiring (like equitable estoppel) that the party injured by the changed position have relied on the first position; (2) merely requiring that the court have relied on, i.e. accepted, the earlier position; and (3) encompassing unseemly adversary behavior that constitutes "playing fast and loose" with the court. WRIGHT, MILLER & COOPER § 4477 at p. 550. Although the second alternative appears to be achieving dominance, one ultimately must be mindful that judicial estoppel is in tension with "the well-entrenched principle that modern procedure welcomes inconsistent positions in the course of a single litigation." *Id.*

■ The dynamic nature of judicial estoppel doctrine warrants proceeding with caution. Thus, the Supreme Court gave the caveat in *New Hampshire v. Maine* that it was not establishing inflexible prerequisites when it spoke of judicial estoppel typically being informed by the existence of a "clearly inconsistent" position that was accepted by a court in a fashion that would create an impression that the courts are being misled and an unfair advantage or detriment that would result without an estoppel. *New Hampshire*, 532 U.S. at 750–51, 121 S.Ct. 1808, (citing with approval WRIGHT, MILLER & COOPER § 4477 (1981 ed.)).

There is little in *New Hampshire v. Maine* that is new. In 1895, the Supreme Court judicially estopped a discharged bankruptcy debtor from questioning the jurisdictional validity of a state-court judgment because he had overcome an objection to his bankruptcy discharge in 1875 by contending that the judgment in question was valid and could be enforced after discharge. *Davis*, 156 U.S. at 685, 15 S.Ct. 555. The Court explained that it "is contrary to the first principles of justice that a man should obtain an advantage over his adversary by asserting and relying upon the validity of a judgment against himself, and in a subsequent proceeding upon such judgment, claim that it was [void as having been] rendered without personal service on him." *Id.* at 691, 15 S.Ct. 555.

■ Similarly, while the Ninth Circuit has used sweeping language condemning "playing fast and loose" with courts, its narrow holdings more cautiously require that the court have "accepted" the earlier position before imposing a judicial estoppel. *Hamilton*, 270 F.3d at 783.

■ The meaning of "acceptance" in the bankruptcy context is construed broadly to "protect[ ] the integrity of the bankruptcy process." *Id.* at 785. Among other possibilities, the grant of a discharge (even if later revoked) or the confirmation of a plan may constitute sufficient "acceptance" of the accuracy of schedules so as to permit judicial estoppel. *Davis*, 156 U.S. at 685, 15 S.Ct. 555 (grant of discharge);

*Hamilton,* 270 F.3d at 784 (revoked discharge);[1] *Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555, 557 (9th Cir.1992) (confirmed plan).

B

■■■ The bankruptcy court here concluded that the assertion that the K & S secured claim was $156,000 was "clearly inconsistent" with the earlier assertion that the K & S secured claim was $268,045.17 and that it had "accepted" the earlier amount when it granted the motion to avoid the judicial lien. While we agree that the positions were "clearly inconsistent" in an objective sense and that the earlier position had been "accepted" by the court, we emphasize that the different capacities in which the inconsistent positions were asserted affect the judicial estoppel calculus.

Here, it is necessary and important to note that the debtors were acting in two different capacities that potentially make a difference in the judicial estoppel calculus because settled principles of jurisprudence permit, or even require, inconsistent positions in some situations. RESTATEMENT (2D) OF JUDGMENTS § 36 (1982).

In avoiding the judicial lien, the Chengs were acting on their own account under 11 U.S.C. § 522(f)(2) to protect their statutory right to keep their homestead exempt from the clutches of their creditors.

In contrast, in light of doubts about the Chengs' standing, their objection to the K & S claim must be assessed as if it had been made by a trustee. In that context, they were acting in their capacity as debtors in possession performing the trustee's fiduciary duty to object to claims in order to maximize payment by the estate on legitimate claims. 11 U.S.C. §§ 704(5), 1106(a)(1) & 1107(a); *e.g., Commodity Futures Trading Com'n v. Weintraub,* 471 U.S. 343, 355–56, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *Wolf v. Weinstein,* 372 U.S. 633, 649–51, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963); *Gumport v. China Int'l Trust & Inv. Corp (In re Intermagnetics Am., Inc.)* 926 F.2d 912, 917 (9th Cir.1991); *Everett v. Perez (In re Perez),* 30 F.3d 1209, 1214 n. 5 (9th Cir.1994).

1

■■■ Ordinarily, the trustee or some party in interest, other than the debtor, prosecutes claim objections. A debtor, in its individual capacity, lacks standing to object unless it demonstrates that it would be "injured in fact" by the allowance of the claim. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 551, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996); *Oregon Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1108–09 (9th Cir. 2003), *In re Barker,* 306 B.R. 339, 346–47 (Bankr.E.D.Cal.2004); 4 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 502.02[2][c] (15th ed. rev.2003) ("COLLIER").

■■■ Debtors similarly lack appellate standing unless they are "adversely and pecuniarily affected" by the outcome. *Menk v. LaPaglia (In re Menk),* 241 B.R. 896, 917 (9th Cir. BAP 1999), *cited with approval, Staffer v. Predovich (In re Staffer),* 306 F.3d 967, 972 (9th Cir.2002).

2

As it is fundamental that the interests of the debtor and the trustee can be adverse,

---

1. The Ninth Circuit took care in *Hamilton* to clarify that it was not fixing a boundary for the meaning of "acceptance":

    Our holding does not imply that the bankruptcy court must actually discharge debts before the judicial acceptance prong may be satisfied. The bankruptcy court may "accept" the debtor's assertions by relying on the debtor's nondisclosure of potential claims in *many other ways.*

    *Hamilton,* 270 F.3d at 784 (emphasis supplied).

it is likewise fundamental that they are entitled to take inconsistent positions. When they do so independently in parallel litigation, a judgment achieved by one of them does not, under standard rules of claim and issue preclusion, bind the other. Thus, the fact that an individual successfully avoids a judicial lien on the basis that the value of the exempt property is "x" does not preclude a trustee from contending that the property is worth "1.5x" and that the surplus nonexempt value can be liquidated for the benefit of the estate.

■ It follows that a position taken by a trustee in litigation that is inconsistent with an earlier position taken by the debtor in litigation to which the trustee is not party, normally is not an inconsistency that warrants imposition of judicial estoppel. In other words, it would be extraordinary for the trustee in the garden-variety bankruptcy to be estopped on account of something the debtor did for its own account *during* the case.[2]

■ When the debtor is simultaneously a debtor in possession under § 1107 performing the duties of a trustee, that representational capacity complicates the analysis. The debtor in possession performing the duties of the trustee is the representative of the estate and is saddled with the same fiduciary duty as a trustee to maximize the value of the estate available to pay creditors.

The fact that a debtor may be performing representational duties of a trustee potentially makes a difference in assessing whether putatively inconsistent positions qualify as such for judicial estoppel purposes because well-settled jurisprudential principles tolerate inconsistent positions

taken in different representational capacities.

■ A person who is acting in multiple capacities is ordinarily permitted to take inconsistent positions without triggering claim or issue preclusion. Thus, *Restatement (2d) of Judgments* § 36 provides:

(2) A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.

RESTATEMENT (2D) OF JUDGMENTS § 36 (1982).

This jurisprudential rule is designed to safeguard the integrity of the representative functions by fostering fidelity to the beneficiaries of representative functions:

a. *Rationale and scope* .... The rule that a person appearing in litigation in one capacity is not, generally speaking, affected thereby in another legal capacity serves to safeguard the integrity of such representative functions. A person appearing on behalf of another is required to act with complete fidelity to the interests of the beneficiary, uninfluenced by consideration of his own interest or advantage. By the same token, in appearing as a representative of another, a person should be free to take positions inconsistent with those he might assert in litigation on his own behalf or on behalf of others he represents in some other fiduciary capacity.

*Id.,* comment a.

■ The rationale for *Restatement* § 36 applies with particular importance in bankruptcy where the debtor in possession

---

2. The effect on the trustee of the debtor's *prepetition* acts is a different question. *Cf.* Tanvir Alam, *Fraudulent Advisors Exploit Confusion in The Bankruptcy Code: How In*

*Pari Delicto Has Been Perverted to Prevent Recovery for Innocent Creditors,* 77 AM. BANKR. L.J. 305, 328–30 (2003).

is a central figure who performs the trustee's duties.[3]

### 3

■ A corollary to the principle stated in *Restatement* § 36 that specifically tolerates inconsistent positions by litigants who are acting in multiple capacities is that

judicial estoppel should be reserved for compelling situations.

As applied to debtors who are performing the duties of the trustee, there are four basic scenarios that could arise: (1) a debtor may be judicially estopped on account of an earlier inconsistent position taken as

**3.** The Ninth Circuit's claim preclusion decision in *DiSalvo v. DiSalvo (In re DiSalvo)*, 219 F.3d 1035 (9th Cir.2000), which rebuffed a debtor in possession's invocation of *Restatement* § 36, does not hold that § 36 is inapplicable in bankruptcy.

In *DiSalvo*, an adversary proceeding brought by the chapter 11 debtor in possession's former spouse led to a judgment that the debt was not excepted from discharge and that it had been extinguished prepetition. In defending, the debtor had performed debtor in possession duties by objecting to the merits of the debt, without raising the prepetition abuse of process claim that he later asserted against her in a separate adversary proceeding.

The assertion that a debtor in possession is not bound by rules of res judicata in a subsequent action in a different capacity was held to be beside the point. He had actually appeared in, and defended, his former spouse's adversary proceeding, as permitted of a trustee or debtor in possession by Fed. R. Bankr.P. 6009, and had successfully asserted a defense—invalidity of claim—that is a typical trustee duty. *DiSalvo*, 219 F.3d at 1037–39. Because he had asserted defenses that belonged as much to the debtor in possession as to the debtor individually, he was obliged to bring all claims arising out of the same "transaction" per *Restatement (2d) of Judgments* § 24 or be precluded for having violated the Rule Against Splitting a claim. Thus, the Ninth Circuit held the subsequent abuse of process claim to be precluded under the doctrine of claim preclusion. *DiSalvo*, 219 F.3d at 1039.

In light of the fact that the debtor in possession had appeared and defended with a defense belonging to the estate and was permitted to do so in the particular adversary proceeding, garden-variety claim preclusion doctrine applied to stop him from subsequently asserting the prepetition abuse of process claim that he tried to raise in a later adversary proceeding.

It is in this context that one must construe the observation made in *DiSalvo* that, in the concededly different context of contract interpretation, the Supreme Court and the Ninth Circuit had said that there was no difference between a debtor and a debtor in possession with respect to being a party to a contract. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); *Teerlink v. Lambert (In re Teerlink Ranch Ltd.)*, 886 F.2d 1233, 1236 (9th Cir.1989) ("TRL as debtor in possession paying the debt of TRL incurred prior to bankruptcy does not put itself in the position of one who pays another's debt and thereby gets an assignment of the debt he paid."). Particularly in light of the fact that a year after *Bildisco* the Supreme Court reaffirmed its emphasis on the separate fiduciary status of the debtor in possession, *Weintraub*, 471 U.S. at 355–56, 105 S.Ct. 1986, the quotation in *DiSalvo* of statements from those decisions should be understood as assertions that distinguishing a debtor from a debtor in possession in bankruptcy litigation is more than a matter of labels, but rather requires a nuanced focus on what is at stake and how various interests are aligned or in conflict. It does not constitute a declaration that *Restatement* § 36 does not apply in bankruptcy.

Professor Cooper agrees when he construes *DiSalvo*:

Preclusion [i.e., the requirement that claims that could have been made are precluded] may be appropriate, however, if the person who acted as representative in the first action had full opportunity and incentive to protect his own personal interests without courting any conflict of interest with those represented.

18A WRIGHT, MILLER & COOPER § 4454, at 441, *citing DiSalvo*, 219 F.3d at 1038–39.

The salient point is that a court should be cautious about imposing judicial estoppel when faced with a situation in which settled jurisprudential principles permit inconsistent positions in different capacities.

debtor; (2) a debtor in possession may be judicially estopped on account of an earlier inconsistent position taken as debtor in possession; (3) a debtor may be judicially estopped on account of an earlier inconsistent position taken as debtor in possession; (4) a debtor in possession ordinarily may not be judicially estopped on account of an earlier inconsistent position taken as debtor.[4] The first two are more eligible for judicial estoppel than the latter two.

It is particularly difficult to justify estoppel when different capacities are involved. Although that point may seem more palatable when one is speaking of not estopping the trustee/debtor in possession on account of an earlier inconsistent position taken by the debtor as debtor, the converse situation—not estopping the debtor for positions taken as debtor in possession—is equally valid.

In either scenario involving different capacities, it is more likely that the debtor will perform the requisite trustee duties "with complete fidelity to the interests of" the estate if the debtor is free to take positions on behalf of the estate independent of what is done for the debtor's own account. RESTATEMENT (2D) OF JUDGMENTS § 36, comment a.

Unconstrained application of judicial estoppel when different capacities are involved could eviscerate the utility of *Restatement* § 36 and correlatively undermine the integrity of the Bankruptcy Code's debtor in possession structure.

We think it significant that neither the Supreme Court nor the Ninth Circuit appears to have imposed judicial estoppel when different representational capacities are involved. To be sure, in some con-texts, it is appropriate to conflate the debtor and debtor in possession. *E.g., Bildisco*, 465 U.S. at 528, 104 S.Ct. 1188 (same employer on labor contract); *Teerlink Ranch*, 886 F.2d at 1235–36 (same party to extant contract). Likewise, claim preclusion may thwart a debtor in possession who elects not to take advantage of a procedural opportunity to participate in litigation. *DiSalvo*, 219 F.3d at 1038–39.

This appeal involves the fourth alternative scenario. As that alternative is not absolute, it is conceivable that some special aspect of the factual scenario would make it equitable to estop the debtor in possession on account of what was done earlier during the case by the debtor in its own capacity. For that reason, we cannot exclude the possibility that estoppel was appropriate in this instance. Since, however, such an estoppel is more difficult to justify, it is incumbent on the proponent of judicial estoppel to explain why that result should pertain.

■ We hold that a court considering the possibility of imposing a judicial estoppel must take into account the implications of any differing capacities in which the person taking the inconsistent position was acting. As that was not done, we cannot conclude that the "clearly inconsistent" aspect of the analysis has been satisfied.

## C

■ The requirement that the prior inconsistent position have been "accepted" is satisfied here. Since § 522(f)(2) operated to limit the avoidance of a judgment lien if, in this case, the K & S claim was not at least $197,309.88, we hold that the

---

4. The parallel tableau where the debtor is not in possession is: (1) a debtor may be judicially estopped on account of an earlier inconsistent position taken as debtor; (2) a trustee may be judicially estopped on account of an earlier inconsistent position taken as trustee; (3) a trustee ordinarily may not be judicially estopped on account of an earlier inconsistent position taken by the debtor.

grant of a motion to avoid a lien is "acceptance" of facts that are essential to that motion for purposes of judicial estoppel.

### D

■ We likewise hold that the third *New Hampshire v. Maine* consideration ("whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party") was satisfied, even though the bankruptcy court thought it was not.

Although the court found this third aspect missing because the judgment lienor, not K & S, was the victim of the inconsistent position, it went on to hold that it could nevertheless impose judicial estoppel because neither the Supreme Court nor the Ninth Circuit regards unfair detriment as essential. *New Hampshire,* 532 U.S. at 751, 121 S.Ct. 1808; *Hamilton,* 270 F.3d at 785.

■ We disagree with the bankruptcy court's analysis. The third consideration in *New Hampshire v. Maine* is stated, by the use of the conjunction "or," in the alternative. It suffices for purposes of judicial estoppel analysis that the Chengs would derive unfair advantage in the absence of estoppel, regardless of whether K & S would be disadvantaged.

The bankruptcy court articulated an unfair advantage that the debtors would derive in the absence of an estoppel when it pointed out that they might be able "inappropriately" to control the surplus equity in the residence that would result from a successful objection to claim. While, as will be seen in the next section, it is not accurate to say that the debtors will be able to appropriate such equity to themselves in the face of claims by unsecured creditors, the existence of such equity on the debtors' side of the table does afford them additional leverage in the process of negotiating a chapter 11 plan. This suffices to constitute an "unfair advantage" for purposes of judicial estoppel analysis.

### E

In the end, the bankruptcy court concluded that the facts of this case warrant judicial estoppel "to protect the integrity of the bankruptcy system" because:

> In order for the lien avoidance process to work properly, a debtor must honestly list the outstanding liens and the amounts on the property so that the bankruptcy court can determine if an exemption is impaired. A bankruptcy court's reliance on the accuracy of the asserted claims and amounts is critical if the system of lien avoidance in bankruptcy is to work efficiently. Otherwise, if debtors believe that they will benefit by misrepresenting the amounts of claims to maximize lien avoidance on the one hand while using lower amounts in claims objections to generate equity over the exemption amounts, chaos will rule to the detriment of all.

Memorandum Decision at 8.

■ We agree. The efficacy of the bankruptcy system depends in important respects on accurate self-reporting by debtors. Debtors and bankruptcy professionals who do not fulfill their obligations deserve to be chastised severely.

Despite the conduct of the debtors (which we point out below can be remedied on other theories) that warrants censure, the court abused its discretion by applying an incorrect legal standard by not considering the implications of the different capacities in which the inconsistent positions were taken.

### II

Even if the court had applied the correct standard, there remains the problem of

whether there is a feasible judicial estoppel remedy. This is a different matter that has generally been ignored in reported decisions.

Commentators are beginning to perceive problems inherent in the nature of bankruptcy as a collective proceeding that may operate to make the remedy worse than the disease. *See* Phillips & Brown, *Continuing Ruminations on Judicial Estoppel: Barging into the Consumer Field,* 2004 NORTON BANKR. L. ADVISOR No. 2 at p. 4; Phillips, *Judicial Estoppel: Is it Krystal Clear Now?,* 2003 *Id.* No. 12 at p. 1; Brown & Carpenter, *Judicial Estoppel in State Courts: A Sequel,* 2002 *Id.* No. 2 at p. 3; Brown et al., *Debtors' Counsel Beware: Use of the Doctrine of Judicial Estoppel in Nonbankruptcy Forums,* 75 AM. BANKR. L.J. 197, 215–16 (2001). The challenge is to fashion a remedy that does not do inequity by punishing the innocent.

### A

■ There is general agreement that "judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire,* 532 U.S. at 750, 121 S.Ct. 1808, *quoting Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990); *Hamilton,* 270 F.3d at 782, 18B WRIGHT, MILLER & COOPER § 4477, at p. 558; 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.31 (3d ed.2003); 28 AM. JUR. 2D *Estoppel & Waiver,* § 75 ("equitable concept").

"Equitable" in this context refers more to fairness and discretion than to the technical distinction between law and equity. 18B WRIGHT, MILLER & COOPER § 4477, at p. 558. It follows that the fashioning of a remedy to implement a judicial estoppel must be grounded on notions of fairness and preventing injustice. Thus, regardless

of whether technical equitable rules and distinctions are controlling, the rich lore of equitable principles cannot be ignored.

■ Preventing injustice and furthering notions of fairness are entrenched equitable principles that need to be taken into account whenever fashioning a remedy in the nature of estoppel.

It is a maxim of equity that a court of equity seeks to do justice and not injustice. It will not do "inequity in the name of equity." 27A AM. JUR. *Equity* § 110 (1996). Nor will it do "unjust or inequitable things." 30A C.J.S. *Equity* § 94 (1992).

■ These maxims of equity apply equally in the context of judicial estoppel.

### B

■ The assumptions that we must make in the procedural context of this appeal crystallize the problem.

As this is a summary judgment case, we must presume that the K & S claim is actually inflated by $112,000 because we must view the facts in the light most favorable to the Chengs, who receive the benefit of all favorable inferences. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, we must presume that there is about $50,000 of surplus equity that, in bankruptcy theory, belongs to other creditors.[5]

A judicial estoppel remedy that makes the K & S claim incontestable merely transfers the windfall that resulted from the erroneously-avoided lien to K & S. The judgment lien creditor who was the direct victim of the lien avoidance that the court determined was fraudulently obtained re-

---

5. The $50,000 approximation is based on the following calculation: Home value $534,000.00, less $75,000 exemption, less $261,690.12 total of all other consensual and tax liens, less $156,000 conceded amount of K & S claim, equals $51,309.88.

mains squeezed out. Unsecured creditors have no opportunity to obtain the benefit of the $50,000. Moreover, making the K & S claim incontestable does not reflect a balance of good against evil, but merely is a transfer of a windfall from one evildoer (who lied to the court about liens) to another evildoer (who is presumed to have claimed $112,000 that is not owed).

In this circumstance, the remedy selected by the bankruptcy court does not satisfy the requirements of equity to avoid doing inequity. Although there is good reason to estop the Chengs, there is no good reason to estop the estate or visit harm on the general body of creditors. K & S should not be permitted to enrich itself unjustly at the expense of the unsecured creditors just because the debtors made the first inequitable move.

### C

■ This problem of passing the true costs off to bystanders is part of a larger problem that commonly leads courts into the trap that this case illustrates. The issue, which economists know as the problem of externalities,[6] pervades the collective environment of bankruptcy where the interests of numerous parties are at risk. The fashioning of a judicial estoppel remedy in bankruptcy requires vigilance to the possibility that what looks like a two-party dispute may be complicated by the effect that the result will have on others.

For example, in the typical judicial estoppel situation, the debtor "forgets" to schedule a cause of action and then remembers to pursue it after the bankruptcy is over. The defendant asks that the liti-

gation be terminated on the theory the debtor is judicially estopped. Courts sometimes oblige. *E.g., Barger v. City of Cartersville,* 348 F.3d 1289 (11th Cir.2003); *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. Gen'l Motors Corp.,* 337 F.3d 314 (3d Cir.2003). *See generally,* Benjamin J. Vernia, Annotation, *Judicial Estoppel of Subsequent Action Based on Statements, Positions, or Omissions as to Claim or Interest in Bankruptcy Proceeding,* 85 A.L.R.5th 353, 2001 WL 80055 (2001).

The correct solution is often to reopen the bankruptcy case and order the appointment of a trustee who, as owner of the cause of action, can determine whether to deal with the cause of action for the benefit of the estate. *Alary Corp.,* 283 B.R. at 566 n. 14; *In re Mahan,* 104 B.R. 300, 300–01 (Bankr.E.D.Cal.1989); *cf., e.g., Johnson v. Si–Cor Inc.,* 107 Wash.App. 902, 906–13, 28 P.3d 832 (2001); *Kelsey v. Waste Mgmt. of Alameda County,* 76 Cal. App.4th 590, 90 Cal.Rptr.2d 510 (1999).

Viewed as a two-party dispute, imposition of judicial estoppel may be unremarkable, but the typical bankruptcy-related flaw in such analysis is the failure to take into account that an unscheduled cause of action is not the debtor's property and that the victims are the debtor's creditors. The equitable balance compels consideration of whether the economic consequences of a judicial estoppel are borne by third parties.

The statutory analysis is straightforward. Property of the estate subsumes, among other things, "all legal and equitable interests of the debtor in property as of the commencement of the case." 11

---

**6.** Externalities are "[a]ctivities that affect others for better or worse, without those others paying or being compensated for the activity." PAUL A. SAMUELSON & WM. D. NORDHAUS, ECONOMICS 736 (14th ed.1992). Since the time of Pigou, economists have argued that every-

one would be better off "if the private consumption or production decision were modified so as to take the external effect into account." GRAHAM BANNOCK ET AL., PENGUIN DICTIONARY OF ECONOMICS 159 (1972).

U.S.C. § 541(a)(1). Property of the estate, regardless of whether it is listed on schedules, remains property of the estate until it is either administered or abandoned under the terms of the Bankruptcy Code. *See* 11 U.S.C. § 554. Property of the estate that is not scheduled or otherwise administered by the time the case is closed remains property of the estate forever. 11 U.S.C. § 554(d). The automatic stay continues to protect property of the estate so long as it retains that status. 11 U.S.C. § 362(c)(1). A closed case can be reopened for the purpose of administering assets. 11 U.S.C. § 350(b). The trustee is authorized to prosecute, with or without court approval, any action or proceeding on behalf of the estate before any tribunal. Fed. R. Bankr.P. 6009.

The consequence is that, once the bankruptcy case is filed, the debtor lacks standing because the trustee owns the cause of action. Moreover, the automatic stay bars any act by anybody, including the debtor, to "exercise control over property of the estate" that belongs to the trustee. 11 U.S.C. § 362(a)(3). As a result, at least in circuits that hold acts in violation of the automatic stay to be void ab initio, everything that happens in a nonbankruptcy forum with respect to the cause of action that is property of the estate without the knowledge of the trustee, including dismissal or imposition of judicial estoppel, is void ab initio. *E.g., Kalb v. Feuerstein,* 308 U.S. 433, 443, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 572–75 (9th Cir.1992); 3 COLLIER ¶ 362.11[1].

Ninth Circuit decisions comport with this view. In *Hay,* it was mindful of the unsecured creditor externality when it took care to be clear that its judicial estoppel of a revested debtor from prosecuting a cause of action that it had omitted from schedules was party-specific and did not necessarily preclude the creditors from vindicating the rights of the estate. *Hay,* 978 F.2d at 557.

Nor does its judicial estoppel decision regarding the omitted cause of action in *Hamilton* perpetrate an externality problem. In that case, the debtor had been so uncooperative that the discharge was revoked and the bankruptcy case dismissed before the debtor sued on the omitted cause of action. Since the bankruptcy case had been definitively dismissed, no collective proceeding remained before the court and there was neither property of the estate, nor automatic stay, nor a body of creditors enjoined as a result of a bankruptcy discharge.

Since the situation here does have the unsecured creditor externality in the form of a body of creditors that would be harmed, it is appropriate to require further proceedings regarding a remedy.

In fashioning a remedy, courts should bear in mind that the traditional equitable remedy is in the nature of a shield, not a sword. An example of a shield based on equitable principles that we have previously approved in the context of exemption litigation is to estop debtors from claiming the full amounts of their exemptions in circumstances in which there has been unseemly conduct amounting to bad faith or unfair prejudice to third parties or to the trustee. *Arnold v. Gill (In re Arnold),* 252 B.R. 778, 784 & 789 (9th Cir. BAP 2000); *cf. Goswami v. MTC Distrib. (In re Goswami),* 304 B.R. 386, 393 (9th Cir. BAP 2003).

Whether a suitable judicial estoppel remedy can be fashioned that does not wound bystanders will be left to the discretion of the bankruptcy court.

### III

If, on remand, the court concludes that it should not impose judicial estoppel be-

cause of the different capacities in which the inconsistent positions were asserted or that it is impracticable to construct a judicial estoppel remedy that passes equitable muster, it is free to consider mainstream procedural rules and doctrines that might be adequate to the task.

The debtors' conduct might, for example, be regarded as cause to appoint a trustee or convert the case to chapter 7. Although the debtors received a chapter 7 discharge in a case commenced within six years before this case and would be ineligible for another discharge, there is no legal impediment to a second chapter 7 case. 11 U.S.C. § 727(a)(8).

Likewise, the role of counsel in preparing and presenting the inconsistent positions might be addressed by reducing the fee award of the lawyer who created the problem, so that the administrative expenses would be less. 11 U.S.C. § 330.

Another standard remedy, that can be accomplished sua sponte, follows from the court's determination that there was "fraud on the court." The court has authority under the penultimate sentence of Federal Rule of Civil Procedure 60(b) to vacate the order avoiding the judicial lien. Fed. R. Bankr.P. 60(b), *incorporated by* Fed. R. Bankr.P. 9024 ("This rule does not limit the power of a court ... to set aside a judgment for fraud upon the court."); 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE § 2870 (1995).

This facet of Rule 60(b) incorporates the "equity rule, which was firmly established in English practice long before the foundation of our Republic," that a court could sua sponte vacate a judgment obtained by fraud. *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 244–45, 64 S.Ct. 997, 88 L.Ed. 1250 (1944).

In fact, there is some ground for preferring mainstream remedies over judicial estoppel:

A party that persuades a court to act on one position may be precluded from later changing its position in the same litigation. This result, however, can be supported—and should be limited—by ordinary principles of procedure. Rather than invoke a supposed estoppel, the court should ask whether sufficient justification has been shown to reopen an earlier ruling, to amend a pleading, or otherwise undo acts already taken. If a party's conduct in the course of the litigation seems to warrant sanctions, sanctions should be drawn from specific rules or inherent authority without bending judicial estoppel theory to the purpose.

18B WRIGHT, MILLER & COOPER § 4477, at pp. 608–11.

Even though judicial estoppel is not necessarily precluded when other remedies are available, Professor Cooper's plea for prudence carries force.

Finally, if the court prefers to free itself of the constraint of the summary judgment presumption in favor of debtors and to address the merits of the claim, there is the possibility that it may determine K & S is actually owed $268,045.17 (or at least $197,309.88). Thus, the bankruptcy court is free to resolve the K & S claim on the merits before deciding what to do about the debtors' inconsistent positions.

*Conclusion*

The bankruptcy court erred when, in ordering a judicial estoppel, it did not address the question of why it was appropriate to override the rule of *Restatement (2d) of Judgments* § 36 that presumptively permits inconsistent positions by parties acting in different capacities. Moreover, the judicial estoppel remedy imposed on

summary judgment was too imprecisely calibrated to withstand scrutiny. Hence, we REVERSE and REMAND to the bankruptcy court for further proceedings.