NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. CC-11-1514-MkHKi |
| | ) |
| MICHAEL G. SEIFERT and ROBIN J. SEIFERT, | ) Bk. No. LA 10-25453-RN |
| | ) |
| | ) Adv. No. LA 10-02359-RN |
| Debtors. | ) |
| | ) |
| | ) |
| MATTHEW TYE, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **MEMORANDUM**[*] |
| | ) |
| MICHAEL G. SEIFERT; ROBIN J. SEIFERT, | ) |
| | ) |
| Appellees. | ) |
| | ) |

Argued and Submitted on February 24, 2012
at Pasadena, California

Filed – April 3, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Richard M. Neiter, Bankruptcy Judge, Presiding

_____

Appearances: Appellant Matthew Tye, in propria persona, argued on his own behalf; RoseAnn Frazee of the Frazee Law Group argued on behalf of Appellees Michael and Robin Seifert.

_____

Before: MARKELL, HOLLOWELL and KIRSCHER, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Debtors Michael and Robin Seifert (the "Seiferts") sought and obtained from the bankruptcy court an order approving their settlement with Matthew Tye ("Tye"). Tye moved to vacate the settlement order, but the bankruptcy court denied Tye's motion. Tye appealed. We VACATE and REMAND.

**FACTS**

In 2008, Tye, a licensed California attorney, represented the Seiferts. The Seiferts' mortgage lender had commenced foreclosure proceedings against their home in La Canada Flintridge, California; Tye defended the Seiferts in the foreclosure proceedings. Tye allegedly preformed over 160 hours of services for the Seiferts and sought payment of roughly $60,000 in attorneys fees, but the Seiferts never paid him.

Representing himself, Tye sued the Seiferts in Orange County Superior Court (OCSC Case No. 30-2008-00115073) for fraud, breach of contract and quantum meruit. In relevant part, Tye alleged that the Seiferts lied to him about, among other things, the value of their home, their ability to pay their mortgage, their ability to pay his fees, and their intent to pay his fees.

On April 21, 2010, the Seiferts filed a chapter 7[1] bankruptcy case, and John Menchaca was appointed to serve as the chapter 7 trustee ("Trustee"). The Seiferts listed Tye in their bankruptcy schedules as an unsecured creditor holding a disputed

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

claim in the amount of $58,240.00.

On July 26, 2010, Tye commenced an adversary proceeding against the Seiferts objecting to their discharge, and seeking to have the fees they allegedly owed him declared nondischargeable ("Complaint").[2]  Whereas his nondischargeability claims ("§ 523 Claims") were based on the same allegations as included in his state court complaint, Tye's claim objecting to the Seiferts' discharge ("§ 727 Claim") was primarily based on his allegation that the Seiferts were improperly using their massive mortgage payment – a mortgage on which they never actually had paid anything and never intended to pay anything – to shelter large amounts of income from their unsecured creditors.

In addition to his Complaint, Tye filed a motion pursuant to § 707(b)(2) and (3) asking the court to dismiss the Seiferts' entire bankruptcy case ("Case Dismissal Motion").  Tye based his Case Dismissal Motion on essentially the same alleged facts as he based his § 727 Claim.[3]

---

[2]Tye did not expressly state in his Complaint which paragraphs of § 523(a) he was relying upon to support his nondischargeability claims for relief, but the text of his Complaint makes reasonably clear that the grounds for his nondischargeability claims were "fraud" (covered by § 523(a)(2)) and "willful and malicious" injury (covered by § 523(a)(6)).

[3]More specifically, Tye alleged in the motion to dismiss:

The Seifert bankruptcy is based on two overwhelming factors: (1) a massive gross income of $29,999.65, and (2) a massive mortgage of $13,393.00 per month that, having never been paid in the 39 months since the Seiferts obtained the mortgage, is now more than $522,327.00 in arrears.  Debtors used this mortgage, in addition to the 1/60 arrears payment, which comes to
(continued...)

3

The Seiferts filed a Civil Rule 12(b)(6) motion to dismiss Tye's adversary proceeding ("Adversary Dismissal Motion") and filed an opposition to Tye's Case Dismissal Motion. The Adversary Dismissal Motion was set to be heard on October 7, 2010. The Case Dismissal Motion initially was set to be heard on September 15, 2010, but the court continued that hearing to October 21, 2010, to give Tye an opportunity to support his motion with admissible evidence and to give the Trustee and the United States Trustee an opportunity to take a position on the Case Dismissal Motion.[4]

---

[3](...continued)
8,705.45, to pad their debt burden by a total of $22,098.45, even though they have never paid the mortgage in over three years, even though they clearly do not intend to pay the mortgage, and even though they could not afford to pay the mortgage even if they wanted to. Once this mortgage is properly excluded from the calculations, Debtors have a tremendous amount of expendable income with which to pay their unsecured claims.

Case Dismissal Motion (Aug 10, 2010) at 2:4-14.

[4]The United States Trustee filed a response to Tye's Case Dismissal Motion on October 14, 2010, in which it essentially joined in the motion. The United States Trustee concluded that the presumption of abuse under § 707(b)(2) did not apply to the Seiferts' chapter 7 bankruptcy filing because the Seiferts mathematically could satisfy § 707(b)(2)'s "means test." However, the United State Trustee also concluded that the Seiferts' financial condition demonstrated their chapter 7 filing was abusive under § 707(b)(3)(B). According to the United States Trustee, if the Seiferts removed from their budget discretionary, excessive and unnecessary spending, instead of their listed monthly deficit of expenses over income in the amount of $7,354.00, the Seiferts would have no less than $5,560.00 in available monthly disposable income.

While beyond the scope of this appeal, we further note that
(continued...)

4

On October 5, 2010, two days before the hearing on the Adversary Dismissal Motion and several days before the hearing on the Case Dismissal Motion, Tye drafted and signed a document entitled "Notice of Settlement of Case & Dismissal of Creditor's § 727 Claim" ("Settlement Notice").[5] The entire text of the Settlement Notice states:

> Plaintiff Matthew Tye and Debtors / Defendants Michael & Robin Seifert hereby notify the Court that they have settled their dispute and wish to take all motions and hearings off calendar. The parties will settle the § 523 portion of the complaint and submit a dismissal for that portion once the settlement performance is complete.
>
> Pursuant to FRBP 7041 and FRCP 41(a)(1)(A)(I), Creditor Matthew Tye seeks to dismiss the 11 U.S.C. § 727 claims in this Adversary proceeding, as to all parties.

Settlement Notice (Oct. 5, 2010) at p.1.

Based on the Settlement Notice, the court issued, on October 6, 2010, a tentative ruling waiving the parties appearances at the October 7, 2010 hearing. As the court put it,

---

[4](...continued)
the Seiferts purported to address the United States Trustee's concerns by agreeing to convert their case to chapter 11; however, the Seiferts immediately defaulted on their chapter 11 duties and were able to persuade the court to reconvert their case back to chapter 7. After reconversion of their case back to chapter 7, the Seiferts ultimately stipulated with the United States Trustee to the dismissal of their bankruptcy case. The bankruptcy court entered the agreed-upon dismissal order on February 27, 2012, just three days after oral argument in this appeal.

[5]The Seiferts' counsel also signed the Settlement Notice. The Seiferts' counsel then filed the document with the court and, according to the attached proof of service, served it on both the Trustee and the United States Trustee.

5

the Settlement Notice "indicated that [the parties] have arrived at a settlement of the Sec. 523 portion of the complaint and Plaintiff seeks to dismiss the Sec. 727 portion of the complaint . . . ." In addition, the October 6, 2010 tentative ruling directed the Seiferts' counsel to prepare an order dismissing the § 727 Claim and continuing the hearing on the § 523 Claim.

The next day, the Seiferts lodged a proposed order with the court based on the court's direction in the October 6, 2010 tentative ruling. The proposed order, entitled "[Proposed] Order Dismissing § 727 Causes of Action; Approving Settlement of § 523 Causes of Action & Withdrawing § 707 Motion," provided as follows:

> 1. In satisfaction of the §523 causes of action in the Adversary Complaint, the Debtors agree to pay the Creditor $15,000.00 in fifteen (15) monthly installment payments of $1,000.00 each, commencing November 1, 2010 and ending January 1, 2012 (hereinafter, the "Settlement Amount");
>
> 2. The Debtors shall stipulate to a $30,000.00 Judgment to the Creditor on the § 523 causes of action in the Adversary Complaint, which the Plaintiff will hold and not file with the Court, unless the Debtors default on the Settlement Amount, and fail to cure the default after 5 days written notice to Debtors' counsel, Baruch Cohen at bcc4929@gmail.com);
>
> 3. The §727 causes of action in the Adversary Complaint are hereby dismissed;
>
> 4. The Creditor's § 707 Motion is hereby withdrawn and the October 21, 2010 hearing date is hereby vacated;
>
> 5. The Creditor's State Court Complaint is hereby dismissed; and
>
> 6. The court retains jurisdiction over the parties to enforce this settlement until performance in full of the terms of the settlement.

Proposed Order (Oct. 7, 2010) at pp. 2-3. Making only minor, non-substantive modifications, the bankruptcy court entered the

6

order as proposed on November 2, 2010 ("Settlement Order").[6]

On November 15, 2010, Tye filed a motion to vacate the Settlement Order. Tye claimed that the Settlement Notice reflected only a tentative (as opposed to final) settlement reached by the parties. According to Tye, the day after he filed the Settlement Notice, he and Cohen reached an impasse as to whether the settlement provided for immediate dismissals of all of Tye's claims and motions. Tye further claimed that, despite the settlement impasse, Cohen lodged the proposed Settlement Order without serving or otherwise notifying Tye. Tye argued that, in order to be enforceable, his settlement with the Seiferts needed to be reduced to a writing signed by both parties (or agreed to in open court). Tye cited no legal authority to support this argument; rather, his argument was fact-based. He claimed, as a factual matter, that the parties intended that the settlement only would be binding once it was reduced to a final writing signed by both parties.[7]

Tye further asserted that Cohen had defrauded the court by

---

[6]The proofs of service attached to the Settlement Order indicate that the Trustee was served both when the Settlement Order was lodged and when the court entered it. Apparently, the Settlement Order was not served at all on the United States Trustee, but the United States Trustee (as noted above) was served with the Settlement Notice.

[7]"Whether the parties intended only to be bound upon the execution of a written, signed agreement is a factual issue." Callie v. Near, 829 F.2d 888, 890-91 (9th Cir. 1987); see also Andreyev v. First Nat. Bank of Omaha (In re Andreyev), 313 B.R. 302, 304-05 (9th Cir. BAP 2004) (holding that bankruptcy court erred in approving unwritten settlement because the party seeking to enforce the settlement submitted no evidence showing that the debtor had actually agreed to the settlement).

7

lodging the proposed Settlement Order without serving Tye. Even though a proof of service showing email service on Tye was attached to the proposed Settlement Order, Tye claimed: (1) he never received his service copy of the proposed order, and (2) Cohen did not actually serve him.[8]

Tye further claimed that Cohen defrauded the court by supposedly modifying the settlement terms. According to Tye, under the parties' tentative settlement, the parties were to defer dismissal of his § 523 Claims until the Seiferts had made all required settlement payments. In contrast, Tye asserted that the Settlement Order as drafted by Cohen provided for immediate dismissal of his entire adversary proceeding, including the § 523 Claims.[9]

On November 18, 2010, Cohen filed a declaration in opposition to Tye's motion to vacate. In relevant part, Cohen stated that he lodged the proposed Settlement Order because the court had directed him to, and before his settlement-related discussions with Tye completely fell apart. Cohen further maintained that Tye drafted and sent him a written settlement agreement, which Cohen and his clients signed and returned to

---

[8]The only evidence that Tye offered in support of his claim that he was not served was his own declaration stating that Cohen never served him with anything except for an opposition to Tye's Case Dismissal Motion. According to Tye, all of Cohen's proofs of service amounted to perjury (except for the one attached to the opposition to the Case Dismissal Motion).

[9]As it turned out, Tye later admitted in open court that he had misinterpreted the Settlement Order, that nothing in the Settlement Order actually provided either for the dismissal of the entire adversary proceeding or specifically for the dismissal of the § 523 Claims. See Hr'g Tr. (Dec. 9, 2010) at 11:12-13:7.

8

Tye. Even though Tye never signed the written settlement agreement, Cohen asserted that it was binding on Tye because the written, unsigned settlement agreement constituted Tye's settlement offer, which the Seiferts accepted by signing and returning before Tye attempted to withdraw the offer.

Cohen attached to his declaration a long string of emails between himself and Tye regarding their settlement discussions. The colloquy took place between October 7 and October 12, 2010, and as a factual matter demonstrates some doubt as to whether the parties manifested their mutual assent to settle and, if so, what constituted the material terms of their settlement. There were several bones of contention discussed (collectively, "Settlement Issues"): (1) whether the settlement should provide for immediate dismissal of all claims in the Complaint as well as the Case Dismissal Motion; (2) whether at some point Tye agreed to let the bankruptcy court decide for the parties whether the adversary proceeding should be immediately dismissed rather than held in abeyance pending completion of the settlement payments; (3) whether the Seiferts accepted Tye's settlement offer by signing and returning the written settlement agreement; (4) whether the Seiferts rejected Tye's settlement offer by making a counteroffer before they signed and returned the written settlement agreement; (5) whether Tye orally withdrew his settlement offer before the Seiferts signed and returned the written settlement agreement; and (6) whether the written settlement agreement was enforceable even though Tye never signed it.

Notwithstanding the above, the other basic terms of

9

settlement never were in dispute. The undisputed settlement terms included, among other things, satisfaction of Tye's fee claim by the Seiferts timely making 15 monthly payments of $1,000.00 each, and Tye's entitlement to a stipulated nondischargeable judgment in the amount of $30,000.00 if the Seiferts defaulted on the settlement payments.

At a hearing held on December 9, 2010, the court denied Tye's motion to vacate. Tye attempted to argue that the parties never reached a binding, enforceable settlement agreement. However, the court rejected that argument. In pertinent part, the court stated: "I think you have an enforceable settlement when you submitted to me the [Settlement Notice]." Hr'g Tr. (Dec. 9, 2010) at 9:8-11. Tye attempted to characterize the Settlement Notice as merely notifying the court of a tentative settlement between the parties, focusing on a single phrase in the Settlement Notice, which used the future tense: "the parties will settle the 523 claim." Id. at 9:14-15. But the court rejected Tye's attempted characterization, essentially reasoning that Tye's characterization of that single phrase was inconsistent with the Settlement Notice as whole, which represented to the court that a settlement had been reached. Id. at 9:19-25; see also id. at 2:10-3:15.

The bankruptcy court entered its order denying Tye's motion to vacate on September 7, 2011, and Tye timely appealed on September 21, 2011.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(I), (J) and (O), and we have jurisdiction under

10

28 U.S.C. § 158.[10]

**ISSUE**

Did the bankruptcy court abuse its discretion when it denied Tye's motion to vacate the Settlement Order?

**STANDARDS OF REVIEW**

"We review the bankruptcy court's decision on a motion to vacate its judgment or order for an abuse of discretion." <u>United Student Funds, Inc. v. Wylie (In re Wylie)</u>, 349 B.R. 204, 208 (9th Cir. BAP 2006) (citing <u>Hammer v. Drago (In re Hammer)</u>, 112 B.R. 341, 345 (9th Cir. BAP 1990), <u>aff'd</u>, 940 F.2d 524 (9th Cir. 1991)).

Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc). And if the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." <u>Id.</u> (internal quotation marks omitted).

---

[10]While the Settlement Order did not immediately and fully dispose of Tye's adversary proceeding, orders approving settlements are themselves typically considered final orders over which we have jurisdiction. <u>See, e.g.</u>, <u>Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.)</u>, 292 B.R. 415, 419-20 (9th Cir. BAP 2003).

11

**DISCUSSION**

**A.   The bankruptcy court abused its discretion when it denied Tye's motion to vacate the Settlement Order.**

As a court of equity, a bankruptcy court may summarily enforce a settlement agreement resolving a dispute that was pending before that court.  See Rains v. Finn (In re Rains), 428 F.3d 893, 907 (9th Cir. 2005)(citing City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.), 22 F.3d 954, 958 (9th Cir. 1994)).  But before the court may enforce the settlement, there must be a proper determination that the parties entered into a binding settlement agreement.  Callie, 829 F.2d at 890.  When the existence and/or the terms of the settlement are in dispute, "the parties must be allowed an evidentiary hearing."  Id.; see also In re Andreyev, 313 B.R. at 305 (holding that party seeking to enforce the settlement has the burden of proof to establish that the agreement existed).

Andreyev is particularly instructive.  There, the creditor filed a nondischargeability complaint against the debtor, and trial was continued several times based on the parties' settlement discussions.  The creditor filed a motion for approval of the settlement, in which the creditor represented that the parties had agreed to settle based on debtor's promise to pay $1,000 but that debtor had failed to sign a proposed stipulated judgment and had failed to respond to the creditor's inquiries.  Debtor did not respond to the settlement motion and did not appear at the settlement motion hearing; however, after the court granted the motion and entered the "stipulated" judgment, the

12

debtor filed a motion for reconsideration, saying that she missed the hearing because of a medical condition and that she wanted to litigate the nondischargeability action. Id. at 304. At the hearing on the reconsideration motion, the debtor told the court that she never agreed to the settlement. The court nonetheless denied the reconsideration motion.

On appeal to this panel, we reversed and remanded, holding that the bankruptcy court had abused its discretion in enforcing the settlement. Id. at 304-05. The creditor argued that the debtor had waived any objection to the settlement motion by not filing a written opposition and by not appearing at the settlement hearing, but we rejected that argument. Id. at 305. As we explained there, "[t]he court has no discretion to enforce a settlement where there are facts in dispute; the court must hold [an evidentiary] hearing." Id. at 304 (citing In re City Equities Anaheim, Ltd., 22 F.3d at 958).

Here, Tye's motion to vacate and the Seiferts' opposition thereto demonstrated that a dispute existed between the parties regarding the existence and terms of their settlement agreement. The parties disagreed whether the written settlement agreement was binding given that it only was signed by the Seiferts and their counsel, and disagreed whether the parties intended to be bound by their other settlement communications in the absence of a fully-executed formal written settlement agreement. They also disagreed whether dismissal of Tye's lawsuits (both in state court and federal court) should be immediate or deferred pending the completion of the settlement payments.

Here, the bankruptcy court did not hold an evidentiary

13

hearing. Moreover, it is clear from a fair reading of the entire December 9, 2010 hearing transcript that the court only considered the Settlement Notice and the Settlement Order in determining that the parties had entered into a binding settlement agreement.[11]

Consequently, the court erred in determining, without an evidentiary hearing, that the parties had entered into a final and binding settlement agreement, and in denying Tye's motion to

[11]When the bankruptcy court decided that a settlement had been reached based exclusively on the Settlement Notice and Settlement Order, and refused to consider any of the parties' evidence submitted regarding the existence and the terms of that settlement, the bankruptcy court's decision arguably could be construed as the application of judicial estoppel against Tye. More specifically, because Tye represented to the court in the Settlement Notice that a settlement had been reached, and because the court relied on the Settlement Notice in entering the Settlement Order, it seems as if the bankruptcy court sub silentio concluded that Tye should be judicially estopped from asserting that there was no settlement.

But this panel has held that judicial estoppel should not be applied when the remedy to be imposed could adversely impact the rights of innocent third parties. See Cheng v. K & S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 454 (9th Cir. BAP 2004). Here, the so-called settlement purported not only to resolve Tye's § 523 Claims but also to dismiss the § 727 Claim, which implicated the rights of all of the Seiferts' creditors and not just Tye's rights. See Rule 7041 and accompanying Advisory Committee Notes (giving bankruptcy court discretion, before approving the dismissal of a § 727 action, to impose terms and conditions on that dismissal in order to ensure that debtor would not "buy" his discharge from the plaintiff to the detriment of his entire bankruptcy estate); Bank One v. Kallstrom (In re Kallstrom), 298 B.R. 753, 759 (10th Cir. BAP 2003) (noting that Rule 7041 enables bankruptcy courts to prevent the "trafficking of discharges"). In short, to the extent the bankruptcy court sub silentio applied judicial estoppel to conclude that a settlement had been reached, such application was improper in light of the potential impact of the settlement on the Seiferts' bankruptcy estate as a whole.

vacate on that basis.[12]

**B. Other considerations.**

**1. Mootness and Other Jurisdictional Issues**

Citing Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33 (9th Cir. BAP 2008), the Seiferts argued in their appeal brief that this appeal is equitably moot. According to the Seiferts, they have paid the full $15,000.00 in settlement payments in reliance on the settlement, and it is not practicable to unwind the settlement. But the burden of proof is on the party claiming mootness to establish that circumstances have occurred which have rendered the matter equitably moot. See Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc. (In re Palmdale Hills Prop., LLC), 654 F.3d 868, 874 (9th Cir. 2011). The Seiferts have not met this burden, because they have not established that the bankruptcy court on remand could not order Tye, if it determines it to be necessary and appropriate, to disgorge the $15,000.00 in fees paid. See Focus Media, Inc. v. Nat'l Broad. Co., Inc. (In re Focus Media, Inc.), 378 F.3d 916, 923-24 (9th Cir. 2004) (stating that appeal is not equitably moot

_____

[12]We note that Tye did not challenge the settlement as an improper dismissal of a § 727 action under Rule 7041. See generally In re Kallstrom, 298 B.R. at 760 (upholding bankruptcy court's refusal to approve settlement and dismissal of § 727 action in quid pro quo exchange for payments to plaintiff). We also note that neither the Trustee nor the United States Trustee objected to the settlement or participated in this appeal even though both had at least some notice of both matters. Because no one raised the argument, it has been waived for purposes of this appeal. See Barnes v. Belice (In re Belice), 461 B.R. 564, 569 n.4 (9th Cir. BAP 2011). But this does not mean that, on remand, the bankruptcy court is necessarily precluded from considering the issue.

15

when court can return parties to status quo by ordering one party to disgorge funds).

The Seiferts further contended at oral argument that, by operation of Cal. Civil Code § 1473,[13] this appeal has been rendered moot because the "full performance" of their obligations to Tye extinguished their obligations and those obligations cannot be reinstated. But in making this argument, the Seiferts are groundlessly assuming that the Settlement Order will not be vacated on remand. Absent the settlement, the Seiferts would need to show that Tye somehow waived any additional performance beyond the Seiferts' payment of the $15,000.00. See Sosin v. Richardson 26 Cal.Rptr. 610, 613 (Cal. App. 1963) (stating that party invoking Cal Civil Code § 1439 must allege and prove full performance or waiver of full performance).

After oral argument, during a routine review of the bankruptcy case docket, we discovered for the first time that the underlying bankruptcy case had been dismissed as of February 27, 2012, based on a stipulation between the Seiferts and the United States Trustee.

We note that the dismissal of the underlying bankruptcy case does not render this appeal moot, because there still is a live controversy between the parties regarding whether the settlement

_____

[13]Cal. Civil Code  § 1473 provides:

Obligation extinguished by performance.  Full performance of an obligation, by the party whose duty it is to perform it, or by any other person on his behalf, and with his assent, if accepted by the creditor, extinguishes it.

16

is binding.  We further note that, notwithstanding the case dismissal, the bankruptcy court retains jurisdiction to interpret the Settlement Order and to determine whether it should be enforced.  See Aheong v. Mellon Mortg. Co. (In re Aheong), 276 B.R. 233, 242 (9th Cir. BAP 2002); Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich), 229 B.R. 777, 780-81 (9th Cir. BAP 1999).

Finally, we note that nothing in § 349 requires a different conclusion regarding the effect of the case dismissal on either our jurisdiction or the bankruptcy court's jurisdiction.  A number of courts have held that § 349 does not necessarily invalidate or render moot bankruptcy court rulings not explicitly referenced in the statute.  See, e.g., In re Pavelich, 229 B.R. at 780 (holding that § 349 did not invalidate discharge order); Tri-River Chem. Co., Inc. v. TNT Farms (In re TNT Farms), 226 B.R. 436, 441-42 (Bankr. D. Idaho 1998) (holding that § 349 did not invalidate lien granted in § 363 cash collateral order, and citing Wytch v. Pac. Reconveyance (In re Wytch), 223 B.R. 190 (9th Cir. BAP 1998), rev'd on other grounds, 213 F.3d 645 (9th Cir. mem. dec. March 24, 2000)).

**2.  Statute of Frauds**

Both parties devoted a significant portion of their briefs on appeal to the issue of whether the settlement was unenforceable by virtue of California's statute of frauds, Cal. Civil Code § 1624(a)(1).[14]

---

[14]Cal Civil Code § 1624(a)(1) provides:

(continued...)

17

However, the statute of frauds can be waived, and was waived here, because Tye did not raise the statute in the bankruptcy court. See 1 B.E. Witkin, SUMMARY OF CAL. LAW, Contracts (10th ed. 2005) § 344 (citing California cases holding that statute must be raised or it is waived); see also Barnes v. Belice (In re Belice), 461 B.R. 564, 569 n.4 (9th Cir. BAP 2011) (holding that arguments not raised in the bankruptcy court can be deemed waived for appeal purposes).

**3. Declarations and Exhibits Attached to the Parties'  Appeal Briefs; Belated Excerpts of Record**

Both parties attached to their briefs new declarations in which they attempted to introduce new evidence that was not presented to the bankruptcy court at or before the time the court entered the order appealed. Generally speaking, we cannot consider these new materials. See Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n. 5 (9th Cir. 2001) ("[E]vidence that was not before the lower court will not generally be considered on appeal."); Kirschner v. Uniden Corp. of Am., 842 F.2d 1074, 1077–78 (9th Cir. 1988) (papers not filed or admitted into evidence by the trial court prior to judgment on appeal were not part of the record on appeal and thus stricken).

Except to the extent the declarations and the new exhibits

---

[14](...continued)
(a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent:

(1) An agreement that by its terms is not to be performed within a year from the making thereof.

18

are relevant to the mootness discussion above, we hereby deem them stricken.

In addition, on February 17, 2012, just days before oral argument before this panel, the Seiferts belatedly filed excerpts of record. With the exception of one document, item number 21 in the excerpts (a declaration of Robin Seifert), all of the documents are properly part of the record on appeal. Furthermore, because we previously lacked an appropriate excerpts of record, we exercised our discretion to review the bankruptcy court's case docket and adversary proceeding docket as part of our review of this appeal. See In re Belice, 461 B.R. at 569 n.2. As a result of our independent review, we had already looked at all of the items properly included in the belated excerpts of record. Consequently, Tye has not been prejudiced by the belated filing of the excerpts of record, so we need not take any action with respect thereto.

## CONCLUSION

For all of the reasons set forth above, we VACATE the court's denial of Tye's motion to vacate, and we REMAND with instructions for the bankruptcy court to hold an evidentiary hearing on the existence and terms of the parties' settlement. If the bankruptcy court, after the evidentiary hearing, determines that the parties did not enter into a binding settlement, then the bankruptcy court should vacate the Settlement Order.