**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2011

No. 08-11098

Lyle W. Cayce
Clerk

DIANE G REED, Real party in Interest,

Plaintiff - Appellee   Cross-Appellant

v.

CITY OF ARLINGTON,

Defendant - Appellant   Cross-Appellee

Appeals from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and KING, JOLLY, DAVIS, SMITH, GARZA, DeMOSS, BENAVIDES, STEWART, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, and HAYNES, Circuit Judges.[*]

KING, Circuit Judge, joined by E. GRADY JOLLY, W. EUGENE DAVIS, JERRY E. SMITH, EMILIO M. GARZA, BENAVIDES, CARL E. STEWART, DENNIS, PRADO, OWEN, JENNIFER WALKER ELROD, LESLIE H. SOUTHWICK, and HAYNES, Circuit Judges:

The question before the en banc court is whether judicial estoppel bars a blameless bankruptcy trustee from pursuing a judgment that the debtor—having concealed the judgment during bankruptcy—is himself estopped from pursuing. We hold that it does not. This result upholds the purpose of judicial estoppel, which in this context is to protect the integrity of the

---

[*] Judge Graves did not participate in this decision.

No. 08-11098

bankruptcy process, by adhering to basic tenets of bankruptcy law and by preserving the assets of the bankruptcy estate for equitable distribution to the estate's innocent creditors.

FACTUAL AND PROCEDURAL HISTORY

Kim Lubke, a former firefighter, won a judgment in excess of one million dollars against the City of Arlington (the "City") pursuant to the Family Medical Leave Act ("FMLA"). During the City's appeal to this court, Lubke and his wife filed a Chapter 7 bankruptcy petition, but failed to disclose on their bankruptcy schedules either his judgment against the City (an asset of the estate) or his associated legal fees (a liability of the estate). Lubke did not inform his attorney in the FMLA case, Roger Hurlbut, about the bankruptcy filing. The Lubkes received a no-asset discharge and their bankruptcy case was closed.

Meanwhile, a panel of this court affirmed the FMLA judgment, but remanded to the district court to recalculate damages. *Lubke v. City of Arlington*, 455 F.3d 489 (5th Cir. 2006). The City then offered Lubke a Rule 68 judgment. In the course of discussing the City's offer with his client, Hurlbut learned of the Lubkes' bankruptcy and immediately notified the trustee of the Lubkes' bankruptcy estate, Diane Reed (the "Trustee"), about the judgment. The Trustee had the bankruptcy case reopened, the Lubkes' discharge revoked, and herself substituted in the FMLA litigation as the real party in interest. She also sent the City a written acceptance of the City's offer of judgment, planning to distribute the recovered asset to the Lubkes' creditors.

The City had filed a petition for rehearing in this court two days prior to receiving Reed's letter of acceptance. When it learned of the Lubkes' bankruptcy, the City sought leave from the panel to argue that Lubke should be judicially estopped from collecting the judgment due to his failure to disclose the judgment in the bankruptcy proceedings. The panel denied the City's petition for rehearing on the FMLA judgment, but issued a mandate directing the district

2

No. 08-11098

court to determine in the first instance whether judicial estoppel applied. *Lubke v. City of Arlington*, 473 F.3d 571 (5th Cir. 2006) (per curiam).

In a very good opinion, the district court held that judicial estoppel should be applied against Lubke, but also held that estopping the Trustee from pursuing Lubke's judgment against the City would run counter to the provisions of the Bankruptcy Code and would be inequitable. *Reed v. City of Arlington*, — F. Supp. 2d —, 2008 WL 8589782 (N.D. Tex. 2008). The court therefore crafted the following remedy: Lubke was estopped from collecting or receiving any money from the judgment against the City. *Id.* at *13. The Trustee, however, would be free to collect the judgment on behalf of the estate for distribution to Lubke's creditors. *Id.* Any remaining funds after distribution would be refunded to the City, and not to Lubke. *Id.* The City appealed.

A panel of this court reversed, effectively vacating the judgment against the City. The panel held that the district court had abused its discretion by distinguishing Lubke's conduct from that of the Trustee in applying judicial estoppel, and concluding that the balance of equities "disfavor[ed] permitting this litigation to continue." *Reed v. City of Arlington*, 620 F.3d 477, 482 (5th Cir. 2010). This panel opinion was vacated by our court's decision to rehear the case en banc. *See Reed v. City of Arlington*, 634 F.3d 769 (5th Cir. 2011). We now affirm the judgment of the district court and state a general rule that, absent unusual circumstances, an innocent trustee can pursue for the benefit of creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy.

## DISCUSSION

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." 18 James Wm. Moore et al., Moore's Federal Practice § 134.30 at 63 (3d ed. 2011) (hereinafter "Moore's"). It is "an equitable doctrine

3

invoked by a court at its discretion" to "protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotation marks and citations omitted).  While enumerating several factors that typically inform the decision whether to apply the doctrine in a particular case, the Supreme Court has refused to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," stating instead that different considerations "may inform the doctrine's application in specific factual contexts." *Id.* at 751; *see also* 18 Moore's § 134.31 at 73 ("Because the doctrine is equitable in nature, it should be applied flexibly, with an intent to achieve substantial justice. . . .  Application of the doctrine of judicial estoppel should be guided by a sense of fairness, with the facts of the particular dispute in mind."); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 at 553 (2d ed. 2002) ("The concern [of judicial estoppel] is to avoid unfair results and unseemliness.").

Here, we apply judicial estoppel "against the backdrop of the bankruptcy system and the ends it seeks to achieve." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999).  These ends are to "bring about an equitable distribution of the bankrupt's estate among creditors holding just demands," *Kothe v. R.C. Taylor Trust*, 280 U.S. 224, 227 (1930), and to "grant a fresh start to the honest but unfortunate debtor," *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (citation and internal quotation marks omitted).  Therefore, judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate.

In assessing whether judicial estoppel should apply, we look to see whether the following elements are present:

No. 08-11098

(1)    the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position;

(2)    a court accepted the prior position; and

(3)    the party did not act inadvertently.

*See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005); *Superior Crewboats Inc. v. Primary P & I Underwriters (In re Superior Crewboats)*, 374 F.3d 330, 335 (5th Cir. 2004). We have held that "[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe*, 412 F.3d at 600.

## A.    Our Result Follows from Bankruptcy Law

Judicial estoppel, as an equitable remedy, must be consistent with the law. *See I.N.S. v. Pangilinan*, 486 U.S. 875, 883 (1988) (citations omitted). In this case, the relevant law is the Bankruptcy Code, which distinguishes between the debtor and the debtor's estate immediately upon the filing of a Chapter 7 bankruptcy. Therefore, while Lubke himself was properly estopped for his dishonesty, his post-petition misconduct does not adhere to the Trustee, who received the judgment asset free and clear of a defense that arose exclusively from Lubke's post-petition actions.

At the moment Lubke filed his petition, the judgment against the City became the property of Lubke's bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"); 5 Collier on Bankruptcy ¶ 541.07[4] at 41 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) (hereinafter "Collier") ("Where a cause of action belonging to the debtor has been merged into judgment prior to bankruptcy, the estate succeeds to all rights under such judgment."). The Trustee became the real party in interest upon

5

No. 08-11098

filing, vested with the authority and duty to pursue the judgment against the City as an asset of the bankruptcy estate. *See* 11 U.S.C. § 323(a) and (b) (the trustee is the representative of the estate with the capacity to sue and be sued); *id.* § 704(a)(1) (requiring the trustee to "collect and reduce to money the property of the estate for which such trustee serves"); *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam). This duty was not affected by Lubke's failure to disclose the asset, and it was not extinguished by the conclusion of the bankruptcy case. *See* 11 U.S.C. § 554(d); *Kane*, 535 F.3d at 385; *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004); 5 Collier ¶ 554.03 at 14 ("Even after the case is closed, the estate continues to retain its interest in unscheduled property."). Finally, the Bankruptcy Code allows a bankruptcy case to be reopened in order to administer assets of the estate. *See* 11 U.S.C. § 350(b). All of these provisions reflect Congress's clear preference for the preservation of the bankruptcy estate and for its equitable distribution to creditors through the bankruptcy process. *See* H.R. Rep. No. 103-835, at 33 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3341.

Furthermore, the general principle that a trustee receives causes of action subject to defenses that could have been raised against the debtor "has been properly limited to pre-petition defenses to a cause of action that would have been applicable to a debtor if no bankruptcy case had been filed." *Riazuddin v. Schindler Elevator Corp. (In re Riazuddin)*, 363 B.R. 177, 188 (B.A.P. 10th Cir. 2007). That is, courts are to evaluate these defenses as they existed at the commencement of the bankruptcy. *See Parker*, 365 F.3d at 1272 n.3 (characterizing *Bank of Marin v. England*, 385 U.S. 99 (1966), as approving the application of "pre-petition defenses and counterclaims to a cause of action that would have been applicable to the debtor had no bankruptcy case been filed"); *Official Comm. of Unsecured Creditors v. R. F. Lafferty & Co.*, 267 F.3d 340, 355–57 (3d Cir. 2001) (citing *Bank of Marin* and the legislative history of 11

No. 08-11098

U.S.C. § 541 in support of the proposition that defenses must be evaluated "as they existed at the commencement of the bankruptcy"); *cf.* 11 U.S.C. § 541(a)(1) (stating that the bankruptcy estate consists of "all legal or equitable interests of the debtor in property <u>as of the commencement of the case</u>" (emphasis added)).

"The case is commenced, and the estate created, when the bankruptcy petition is filed." *Burgess v. Sikes (In re Burgess)*, 438 F.3d 493, 496 (5th Cir. 2006) (en banc). After filing his bankruptcy petition—and hence after the creation of the estate—Lubke represented to the bankruptcy court that he did not own a judgment asset by purposefully omitting it from his bankruptcy schedules. By pursuing the judgment post-petition, however, Lubke represented to the district court and to this court that he did own such an asset. The bankruptcy court effectively accepted Lubke's first position that no judgment existed and that he had no assets for distribution by issuing what is known colloquially as a "no asset" discharge.

This chain of events makes clear that the elements giving rise to judicial estoppel did not exist until <u>after</u> the bankruptcy petition was filed and the judgment had passed into the bankruptcy estate. Because the City could not have asserted judicial estoppel against Lubke based on the facts as they existed before the commencement of the bankruptcy, the Trustee received the judgment asset free of this affirmative defense. *Cf. Cheng v. K & S Diversified Invs., Inc. (In re Cheng)*, 308 B.R. 448, 455 (B.A.P. 9th Cir. 2004), *affirmed*, 160 F. App'x 644 (9th Cir. 2005) ("[I]t would be extraordinary for the trustee in the garden-variety bankruptcy to be estopped on account of something the debtor did for its own account *during* the case.").

**B.    This Result Also Follows from Equity**

Because judicial estoppel is an equitable doctrine, courts may apply it flexibly to achieve substantial justice. *See New Hampshire*, 532 U.S. at 750; 18 Moore's § 134.31 at 73. "The challenge is to fashion a remedy that does not do

inequity by punishing the innocent." *In re Cheng*, 308 B.R. at 459. Estopping the Trustee from pursuing the judgment against the City would thwart one of the core goals of the bankruptcy system—obtaining a maximum and equitable distribution for creditors—by unnecessarily "vaporizing" the assets effectively belonging to innocent creditors. *See Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006).

Lubke's unsecured creditors, including his FMLA attorney Roger Hurlbut, filed timely proofs of claim in the reopened bankruptcy case in the sum of $504,951.87. Other creditors filed late claims in the sum of $84,846.61. Those creditors having meritorious claims are entitled to an equitable distribution of the estate's assets, which include the judgment against the City. *See* 11 U.S.C. § 726(a)(3) (tardily filed claims may share in the distribution once timely filed claims are satisfied). As Judge Easterbrook so eloquently stated in *Biesek*:

> [The debtor's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his [tort] claim would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [the debtor] has been doing behind their backs. Creditors gypped by [the debtor's] maneuver are hurt a second time by the district judge's decision. <u>Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.</u> Instead of vaporizing assets that could be used for the creditors' benefit, district judges should discourage bankruptcy fraud by revoking the debtors' discharges and referring them to the United States Attorney for potential criminal prosecution.

*Biesek*, 440 F.3d at 413 (emphasis added); *see also In re Cheng*, 308 B.R. at 460 (holding that the "equitable balance compels consideration of whether the economic consequences of a judicial estoppel are borne by third parties" because "an unscheduled cause of action is not the debtor's property and . . . the victims are the debtor's creditors").

No. 08-11098

The City argues that equity does not favor the Trustee.  Chief among its complaints is the fact that Roger Hurlbut, whose claim for legal fees stemming from the FMLA action makes him the primary creditor of Lubke's estate, is an attorney.  Section 726 of the Bankruptcy Code requires the property of the estate to be distributed without considering whether the debt is owed to an attorney, a credit card company, or any other type of creditor.  *See* 11 U.S.C. § 726. Unable to articulate why Hurlbut's occupation is relevant here, the City suggests that Hurlbut is somehow associated with Lubke's deception and is therefore not an innocent creditor.  The district court explicitly found otherwise, *see Reed*, 2008 WL at *2 & n.5, and we find no reason to doubt its conclusion.

The City also argues that Lubke will benefit if the Trustee is allowed to collect the judgment and distribute it in payment to Lubke's creditors.  The City's concern appears to be that the creditors, having been satisfied through the bankruptcy process, will not pursue collection efforts against Lubke despite the revocation of his bankruptcy discharge.  However, this is a "benefit" in theory only.  Even if the Trustee were estopped from collecting the judgment, it is highly unlikely that Lubke's creditors will pursue him, both because their claims may be time-barred under state law, and because Lubke does not have any assets aside from the judgment with which to satisfy the creditors' claims.

Finally, the City argues that it has been victimized by having to pay fees and expenses associated with litigating the issues resulting from Lubke's non-disclosure.  *See* 29 U.S.C. § 2617(a)(3) (2006).  These fees, however, resulted from the City's own efforts to avoid payment of the affirmed FLMA judgment by having the Trustee estopped in addition to Lubke.  Furthermore, the City's argument is of doubtful relevance to the judicial estoppel analysis.  *See In re Coastal Plains*, 179 F.3d at 213 ("Again, the purpose of judicial estoppel is to protect the integrity of courts, not to punish adversaries or to protect litigants.").

9

No. 08-11098

The district court tailored its remedy to address the facts and circumstances of this case. Its careful application of judicial estoppel protected the integrity of the bankruptcy system by deterring debtors from concealing assets; was consistent with the core bankruptcy goal of obtaining a maximum and equitable distribution for creditors; and abided by bankruptcy law and principles of equity.

## C.     This Result Is Consistent with Our Own Precedents

Declining to estop the Trustee is consistent with the trio of judicial estoppel cases we have hitherto decided in the bankruptcy context. The material facts of this case are indistinguishable from those of *Kane v. National Union Fire Insurance Co.*, 535 F.3d 380 (5th Cir. 2008) (per curiam), our most recent opinion. Both cases involve a Chapter 7 trustee who substituted into a cause of action to pursue a claim that the debtor had wrongly concealed during the bankruptcy proceeding. Neither trustee abandoned the claim at any point. In both situations, estopping the trustee would unnecessarily deny the estate's innocent creditors their right to seek some share of the recovery. Faced with the identical question raised here, we held in *Kane* that the trustee of a bankruptcy estate should not be judicially estopped from pursuing such a claim. *Id.* at 387. We reasoned that the Kanes' personal injury claim was an asset of the estate that the trustee had never abandoned, and that the only way the creditors would be harmed is if judicial estoppel were applied to bar the trustee from pursuing the claim on behalf of the estate. *Id.*

In *Superior Crewboats Inc. v. Primary P & I Underwriters (In re Superior Crewboats)*, 374 F.3d 330 (5th Cir. 2004), we precluded the debtors themselves from pursuing a lawsuit for their own benefit that they had failed to disclose in their bankruptcy schedules. The debtors incorrectly told the bankruptcy trustee that the claim was proscribed by the statute of limitations; the trustee agreed, and formally abandoned the claim under the Bankruptcy Code. *Id.* at 333.

No. 08-11098

Upon abandonment, the estate's interest in the claim reverted to the debtors, *see* 11 U.S.C. § 554, who were then properly estopped from benefiting from their deception, s*ee In re Superior Crewboats,* 374 F.3d. at 336; *Kane*, 535 F.3d at 386. Here, the Trustee has not abandoned the estate's interest in the judgment against the City; she is therefore entitled to pursue the judgment as the real party in interest for the benefit of the estate's creditors.

In *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197 (5th Cir. 1999), we judicially estopped a debtor's successor from collecting a judgment it obtained by pursuing, outside of bankruptcy, an undisclosed claim that was part of the debtor's estate. The trustee in that case was also estopped based on a sharing agreement with the debtor's successor in which the debtor's successor stood to receive 85 percent of any recovery, while the estate would receive only 15 percent. *See id.* at 204. Key to our application of judicial estoppel in *Coastal Plains* was the fact that recovery would benefit the individual who actually perpetrated the bankruptcy fraud in great disproportion to the bankruptcy estate. *See Kane*, 535 F.3d at 387 (citing *In re Coastal Plains*, 179 F.3d at 202–03, 212). No such equitable concerns inhere in this case, where Lubke does not stand to benefit from recovery of a judgment even if there is a surplus after all debts and fees have been paid.

## D.     This Result Accords with Other Circuits

The Eleventh Circuit has decided, and the Seventh and Tenth Circuits have opined, that judicial estoppel should not be applied against an innocent trustee with standing to pursue a claim. In *Parker v. Wendy's International, Inc.*, 365 F.3d 1268 (11th Cir. 2004), which involved facts virtually identical to this case, the Eleventh Circuit held that judicial estoppel should not be applied against a trustee pursuing a debtor's concealed discrimination claim after the debtor's discharge. *Id.* at 1272. The Eleventh Circuit reasoned that the claim became an asset of the bankruptcy estate, and the trustee became the real party

11

No. 08-11098

in interest in that claim, when the debtor filed her petition. *Id.* The trustee neither abandoned the claim, nor took an inconsistent position with regard to the claim. The Eleventh Circuit therefore concluded that the trustee could not be judicially estopped from pursuing it. *Id.*

In *Eastman v. Union Pacific Railroad Co.*, 493 F.3d 1151 (10th Cir. 2007), the Tenth Circuit indicated that it would not apply judicial estoppel against a trustee pursuing a debtor's personal injury claim discovered after the debtor's discharge, because the trustee was the real party in interest and had not engaged in contradictory litigation tactics. *Id.* at 1155 n.3 (citations omitted); *accord Riazuddin*, 363 B.R. at 187–88 (holding that discharged debtors' misconduct in concealing their personal injury claim did not estop the estate's trustee from pursuing the claim on behalf of the estate after the claim was discovered).

In *Biesek v. Soo Line Railroad Co.*, 440 F.3d 410 (7th Cir. 2006), the Seventh Circuit suggested that a bankruptcy trustee should be able to pursue a claim on behalf of innocent creditors that the debtor himself would be judicially estopped from pursuing. *See id.* at 413; *accord Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("[B]ankruptcy fraud designed to hide an asset from creditors does not prevent the creditors themselves from realizing on the claim after its discovery."). The court noted that "[j]udicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud [the creditors] is not an equitable application." *Biesek*, 440 F.3d at 413.

We endorse the reasoning of our sister circuits in holding that the district court correctly refused to apply judicial estoppel against the Trustee in this case.

### E.    Attorneys' Fees and Damages

Addressing the City's appeal of the district court's award of legal fees for work performed after the date of the FMLA judgment, we hold that the district court did not abuse its discretion in awarding such fees. Addressing the

No. 08-11098

Trustee's cross-appeal of the district court's offset of the City's contributions to Lubke's retirement funds against the FMLA damage award, we hold that the offset complied with the panel's instructions on remand.

## CONCLUSION

Absent unusual circumstances, an innocent bankruptcy trustee may pursue for the benefit of creditors a judgment or cause of action that the debtor—having concealed that asset during bankruptcy—is himself estopped from pursuing. The district court's Final Judgment, filed on August 8, 2008, and its Order Granting Attorney's Fees and Costs, filed on October 7, 2008, are both AFFIRMED.

No. 08-11098

EDITH H. JONES, Chief Judge, with whom HAROLD R. DeMOSS and EDITH B. CLEMENT, Circuit Judges, join, dissenting:

With due respect to my brethren, I respectfully dissent from their balancing of the equities in this case and from one significant legal point. We do not disagree on the general principles governing judicial estoppel except for one thing. The majority posits that only the interests of the bankruptcy process are involved here. I would contend that the federal district and circuit courts are part of the relevant judicial process, and that a broader view should have been taken of the impact of satellite litigation generated by Lubke's deception. First, our court had to expend significant resources concluding an opinion in the original appeal of this case, only to find that the plaintiff was no longer the proper party. Accordingly, we were required to remand for reconsideration by the district court a plethora of procedural issues made necessary only by Lubke's deception. These events necessitated a special oral argument hearing, another appellate opinion, and eventually, an en banc decision attempting to resolve our conflicting precedents.[1] Second, because this two-party dispute evolved into a protracted three-party dispute with the trustee and her counsel, the fairness of the fee award exacted against the taxpayers of the City of Arlington has been seriously compromised, contrary to the courts' duty to impose reasonable fees on a defendant. This may be brushed off as simply the logical consequence of the convoluted legal proceedings, but it is Lubke's deception that set them in motion,

---

[1] Notwithstanding the majority's proffered reconciliation of *In re Superior Crewboats* and *Kane*, the nuances of bankruptcy procedure fail to explain why judicial estoppel should work differently. The majority finds the distinction in the *Superior Crewboats* trustee's "abandonment" of a potential lawsuit owned by the debtor, an action that removed the lawsuit from the trustee's control. *See* 11 U.S.C. § 554. Just as a closed bankruptcy case may be "reopened" when a trustee finds hidden assets, however, an abandonment may be revoked in the best interest of creditors. *See, e.g.*, *In re Killebrew*, 888 F.2d 1516, 1520 n.10 (5th Cir. 1989); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002). The majority opinion should at least apply its own rationale consistently.

not the City's violation of his FMLA rights. Thus, the majority's reasoning purports to protect the interests of creditors in general, while overlooking that the goal of judicial estoppel is to protect the integrity of the entire judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 1814 (2001).

How Lubke perverted the overall judicial process is easily explained. Had he revealed to his employment lawyer Hurlbut that he was filing a Chapter 7 petition just after the city's appellate brief had been filed in this court, the trustee would have immediately been substituted as the real party in interest. The trustee might have accepted the Rule 68 Offer of Judgment, and there would have been no need for a remand to consider judicial estoppel. Thus, the City would not have had to invoke *In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir. 2004), the then-governing authority that strongly supported a claim for judicial estoppel.[2] There might even have been no need for a trial on remand to recalculate damages, inasmuch as the financial dynamics of Chapter 7 often impel a trustee to settle litigation involving the debtor in order to wind up a case expeditiously and inexpensively. Certainly, this case would have terminated much faster and more sensibly, while the creditors who originally filed proofs of claim still had enforceable rights in Lubke's bankruptcy.

Instead, the courts are five years down the road, over a quarter million dollars of originally filed proofs of claim have evaporated, and the biggest beneficiaries of the reopened case–by far–are lawyers. *See Reed v. City of Arlington*, 620 F.3d 477, 480 n.2, 483 (5th Cir. 2010) (panel opinion).

One may extol the virtues of "innocent" trustees, and I do not question the integrity of this trustee at all, but let us not romanticize what's going on here. Lubke is going on with his life, effectively freed by the passage of time from the

---

[2] Not until *Kane* came out, in 2008, was there support in this circuit for the trustee's position.

claims of unsecured creditors.  It is pure speculation to say, as does the majority, that he has "no assets."  He was not honest about this litigation, why not about other assets?  The expressed concern for "the creditors" lacks a certain depth of feeling.  Those creditors were, and remain, almost exclusively credit card companies.  Two-thirds of their claims will never be repaid because they were not renewed when the case was re-opened long after it had been declared a no-asset filing.  The record suggests that others cut their losses by bundling and selling their unpaid claims to third parties.

As for the lawyers, Hurlbut received over $100,000 from Lubke even before the bankruptcy was filed, yet claims from the estate nearly $450,000 in additional fees.  The trustee and her attorney will be reimbursed well into six figures as administrative priority claimants who will be paid ahead of the unsecured creditors.  All this is legal, but in the commercial world, the transactional costs of such creditor recovery are wildly disproportionate.  Surely courts need not cover our eyes against the real dollar impact of our balancing of "equities."

The majority notes that in "unusual circumstances," the doctrine of judicial estoppel may occasionally prevent a trustee from recovering on a claim that the debtor concealed from the courts upon filing for bankruptcy relief. Unfortunately, the majority did not balance the factual equities here as I think was obviously appropriate.