HAYNES, Circuit Judge,
dissenting:
I respectfully dissent. The majority opinion improperly places the summary judgment burden of this affirmative defense on Love. To the extent we need to *267 reach the merits, the law supports Love, not Tyson. Finally, even if Love is es-topped from benefítting personally, the district court should have considered relief that would have allowed Love’s estate to recover on a potential judgment. Indeed, despite our recent en banc opinion reining in the automatic application of judicial es-toppel when it harms creditors, the majority opinion affirms a district court that did just that. I would thus reverse and remand for further proceedings.

I. Summary Judgment Standards

Judicial estoppel is an affirmative defense. See, e.g., Reed v. City of Arlington, 650 F.3d 571, 576 (5th Cir.2011) (en banc) (citations omitted). When a party moves for summary judgment on an affirmative defense, it “bear[s] the burden of proof at trial and therefore must show that it has produced enough evidence to support the findings of fact necessary to win.” El v. Se. Pa. Transp. Auth., 479 F.3d 232, 237 (3d Cir.2007). Therefore, even to reach the question of whether Love has shown that judicial estoppel does not apply, Tyson must have proven that it does. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that summary judgment is proper “against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial”).[1]
We have required that a party asserting judicial estoppel must show that: “(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.” Reed, 650 F.3d at 574. It is important to note, however, that these three elements only limit judicial estoppel’s application; they are necessary but not always sufficient. See, e.g., Kane v. Nat’l Union Fire Ins. Co., 535 F.3d 380, 385-86 (5th Cir.2008); Browning Mfg. v. Mims (In re Coastal), 179 F.3d 197, 206 (5th Cir.1999).[2]

A. Tyson’s Proof

Love does not take issue with the first two estoppel factors on appeal, focusing instead on the inadvertence prong. A *268 “debtor’s failure to satisfy its statutory disclosure duty is ‘inadvertent’ only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.” In re Coastal, 179 F.3d at 210. As the party invoking judicial estoppel on summary judgment, Tyson thus bore the burden of proof and had to prove, not just hypothesize, that Love had knowledge and a motive for concealment. Tyson failed to do so.
Love’s knowledge[3] of the claim during the time of the bankruptcy cannot be disputed as he filed the EEOC claim during the pendency of the bankruptcy. Tyson failed, however, to show as a matter of law that Love had a motive to conceal his claim.
On this third prong, Tyson’s sole “proof’ was its summary judgment contention that “Love had a motive to conceal [his claim] because any recovery he might receive from this litigation would go to him free and clear of any claims of his creditors, particularly his unsecured creditors who receive nothing under his confirmed plan.” This statement is untrue as a matter of law and, thus, did not shift the summary judgment burden to Love to do anything.
Unlike the procedural posture of other cases we have had on this subject, any recovery from Love’s cause of action would not be “free and clear of his creditors.” Rather, it belongs to the bankruptcy es-fate. At the time he filed his original schedules, he had a not-yet filed EEOC claim. That “claim” became part of the bankruptcy estate the moment Love filed his petition for bankruptcy by operation of 11 U.S.C. § 541(a)(1).[4] When he subsequently failed to amend his schedules to reveal the EEOC filing, it nonetheless was part of his estate. The bankruptcy court’s order confirming Love’s plan did nothing to change that. While the typical Chapter 13 plan “vests all of the property of the estate in the debtor,” “free and clear of any claim or interest of any creditor,” 11 U.S.C. § 1327(b)-(c), Love’s plan provided that: “All property [of the estate] shall remain property of the estate and shall vest in the debtor only upon dismissal, discharge, or conversion. The debtor shall be responsible for the preservation and protection of all property of the estate not transferred to the Trustee.” This order provision is apparently standard in the Northern District of Mississippi.[5] Thus, at the time Love filed the instant case, he was a Chapter 13 debtor with a confirmed plan that did not give him the right to file the lawsuit on his own behalf. Since we ascribe “knowledge” of the bankruptcy laws to the detriment of debtors, In re Coastal, 179 F.3d at 212, we should also assess the debtor’s “motive” in light of the “knowledge” that he would not take “free and clear” if he lied in his schedules.
*269 By operation of the bankruptcy order and applicable law, Love initiated this claim against Tyson on behalf of the estate. While the property — including the cause of action — remained in the estate, Love was authorized to “remain in possession of all property of the estate,” 11 U.S.C. § 1306(b), and, as a Chapter 13 debtor, to exercise certain “rights and powers of [the] trustee” with respect to the estate’s property, 11 U.S.C. § 1303.[6]
Finally, because Love is obliged to recover on behalf of the estate, any judgment does not belong to him. Even if Love had not disclosed the claim, that asset would belong to the estate under 11 U.S.C. § 554(c) — (d)—at least unless his recovery is greater than all his debts. See Collier on Bankruptcy ¶ 554.03 (Matthew Bender, 16th ed. 2011) (“[I]f property was not properly scheduled by the debtor, it is not automatically abandoned at the end of the case .... Even after the case is closed, the estate continues to retain its interest in unscheduled property.”); see also Kane, 535 F.3d at 387 (citing In re Miller, 347 B.R. 48, 53 (Bankr.S.D.Tex.2006), for the proposition that unscheduled claims that belong to the estate may be administered through a reopened bankruptcy case).
The majority opinion faults this analysis, stating that it improperly assumes that Love was “acting for the benefit of his creditors from the inception of his lawsuit ... and automatically attributes good motives to Love despite very real incentives for Love to conceal his claims.” I do not make this attribution, however. Rather, I approach the analysis from the viewpoint of the movant’s burden: a movant who raised an affirmative defense and appropriately bears the burden at trial. I do not reason that Love “necessarily” had good motives, only that Tyson has not shown as a matter of law that he “necessarily” had “bad” ones.
Accordingly, Tyson cannot discharge its affirmative summary judgment burden merely by arguing — incorrectly as a matter of law — -that Love stood to recover on his claim “free and clear of any claims of his creditors” at the time he failed to amend his bankruptcy schedules. Tyson thus failed to establish an element essential to its affirmative defense in the district court, and summary judgment should have been denied. In response to the majority opinion’s argument that this dissenting opinion removes judicial estoppel as an option, I reply that to hold that summary judgment in Tyson’s favor is inappropriate is not tantamount to saying that summary judgment should be granted to Love.

B. Love’s Response

We should stop here, as I have shown that no summary judgment burden “shifted” to Love. However, even if it did, I disagree that Love failed to respond in kind, creating a material factual dispute on whether he had motive to conceal. Love’s summary judgment response set forth the Supreme Court’s judicial estoppel standard from New Hampshire v. Maine, 532 U.S. 742, 751, 121 S.Ct. 1808, 149 L.Ed.2d *270 968 (2001). See also Hall v. GE Plastic Pac., 327 F.3d 391, 399 (5th Cir.2003). There, he disclaimed the third prong of that standard.[7] Indeed, he expressly responded to Tyson’s claim that his “motive” was to gain money “free and clear” by arguing in response that any recovery would not be paid to him but to the estate. He stated:
Plaintiff will not derive any unfair advantage or impose any unfair detriment on any opposing party if not estopped. Plaintiffs bankruptcy is still pending, and any monies paid by Defendant through settlement or judgment in this case would go into the bankruptcy to pay Plaintiffs creditors first. To the contrary, if Plaintiff is judicially es-topped his creditors would be injured, and would be prevented from receiving any monies from the current case.
Thus, if Tyson’s mere allegation that Love’s motive was to gain an unfair personal advantage by taking money “free and clear of creditors” is enough to satisfy its summary judgment burden on “motive,” then Love’s statement that any monies paid “would go into the bankruptcy to pay Plaintiffs creditors first” should similarly discharge his non-movant’s burden.[8] The majority opinion discounts Love’s argument because it does not use the “magic words” of “motive” or “inadvertence.” We have not so exalted form over substance, particularly in the face of a Supreme Court opinion using the exact language Love used.
The majority opinion contends that whether the claim is “free and clear” or not, a potentially deviant debtor may al *271 ways attempt to “collect any recovery on claims without Ms creditors’ knowledge.” I agree that there is something problematic about a debtor who conceals assets that do not belong to him in an effort to forever keep his creditors in the dark. This hypothetical deviant, however, does not, as a matter of law, establish Love’s intent to conceal where his only action was an omission and the claim remains property of the bankruptcy estate.
The Sixth Circuit’s reasoning in Browning v. Levy supports my conclusion. 283 F.3d 761, 775-76 (6th Cir.2002). After citing our decision in In re Coastal, 179 F.3d at 210, on the issue of inadvertence, the court considered whether a debtor (NW) had motive to conceal where it failed to disclose its legal claim, but was acting as a debtor-in-possession, similar to a trustee:
NW had no motive for concealment in light of its role as a debtor-in-possession, having all the rights and duties of a trustee. 11 U.S.C. § 1107. Under [NW’s] Plan of Reorganization, all of the estate’s assets are to be reduced to cash by NW and distributed to creditors in accordance with the terms of the plan and the priority provisions of the Bankruptcy Code. NW will thus receive no windfall as a result of its failure to disclose its claims, because only [NW’s] creditors will receive the distribution of any recovery from SSD. This lack of motive for concealment leads to the conclusion that NW’s failure to disclose was, without any evidence to the contrary, inadvertent.
283 F.3d at 775-76 (emphasis added). Importantly, the court also pointed out that the Defendant “provide[d] no evidence that NW intended to ‘have its cake and eat it too.’ ” Id. at 776. Similarly, the Defendant “presented no proof to show that NW intended to convince the bankruptcy court that it had no claims against SSD. NW’s omission [was] as consistent with inadvertence as it [was] with an affirmative assertion.” Id. at 775.
The effect of the majority opinion is to make judicial estoppel virtually mandatory in all cases of non-disclosure where a party could be said to “know the facts of’ his claim, In re Coastal, 179 F.3d at 212, and essentially concludes that any debtor who fails to disclose a claim has a nefarious motive to do so. This reasoning, however improperly presumes fraudulent intent from the outset.[9] However, as the majority opinion correctly noted, “[w]hether a debtor’s failure to disclose claims was inadvertent presents a question of fact.” Love’s argument substantively addressed his lack of motive to conceal and directly responded to Tyson’s conclusory allegation to the contrary. These circumstances indicate that there is at least a reasonable question as to whether Love had the nec *272 essary motive, and thus intent, to conceal his claim against Tyson. Love’s conduct was at least as consistent with inadvertence as it was with intentional concealment, and all inferences must be resolved in favor of the nonmovant. The district court failed to take these considerations into account; therefore, summary judgment in favor of Tyson was improper.

II. Abuse of Discretion

We should reverse and remand for further proceedings based upon the summary judgment posture outlined above. Because the majority opinion reaches the question of whether the district court abused its discretion, however, I will address it as well.
Though “we have applied judicial estop-pel to bar an unscheduled claim when others, the debtors or other insiders, would benefit to. the detriment of creditors if the claim were permitted to proceed,” Kane, 535 F.3d at 387 (citing Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats), 374 F.3d 330, 333 (5th Cir.2004); In re Coastal, 179 F.3d at 203), those are not the circumstances we have before us. That Love was a Chapter 13 debtor obligated to act on behalf of the estate distinguishes this case from In re Superior Crewboats, 374 F.3d at 333, and In re Coastal, 179 F.3d at 203. Indeed, both were Chapter 7 liquidation cases in which the debtor had already obtained a complete discharge of its debts before seeking to recover on undisclosed claims purely for its own benefit.[10]
The court in Kane distinguished In re Superior Crewboats, 374 F.3d at 333, on facts much like these, where the Chapter 7 bankruptcy was reopened to pursue the Kanes’ claim for the benefit of the estate’s creditors. 535 F.3d at 387. In contrast to In re Superior Crewboats, where the estate had “reverted to the debtors as though the bankruptcy had never been filed” and the debtors stood to benefit directly from pursuing their claim, we stated:
[T]he Kanes stand to benefit only in the event that there is a surplus after all debts and fees have been paid. As the bankruptcy court aptly observed in In re Miller, ‘There is a statutorily explicit difference between cases in which property is not listed in the [bankruptcy [schedules but is disclosed and administered (as in the Superior Crewboats case ...) and the instant case in which property was not disclosed and was not administered.’ Consequently, In re Superior Crewboats, Inc. does not require the application of the equitable doctrine of judicial estoppel in this case as a matter of law.
Id. (quoting In re Miller, 347 B.R. at 53). Jethroe is similarly distinguishable. 412 F.3d at 599 (5th Cir.2005). There, the bankruptcy court had confirmed the debt- or’s Chapter 13 plan, but dismissed the bankruptcy proceeding before the plan was completed. Id. Therefore, it would have been impossible for the creditors in Jethroe to benefit from the claim because there was no longer a bankruptcy estate.
This case, though different in kind, is controlled by our decisions in Reed and Kane. Both concerned whether a Chapter 7 trustee is estopped from pursuing unscheduled claims on behalf of the estate where the debtor had wrongly concealed *273 claims during the bankruptcy proceeding. Reed, 650 F.3d at 578; Kane, 535 F.3d at 387. We held in both cases that the claims originally brought by the debtors were unabandoned assets of the estate and that “the only way the creditors would be harmed is if judicial estoppel were applied to bar the trustee from pursuing the claim on behalf of the estate.” Reed, 650 F.3d at 578; see Kane, 535 F.3d at 388 (finding that judicial estoppel, as an equitable doctrine, should not be used if its application would “land another blow on the victims of bankruptcy fraud,” that is, the creditors (quoting Biesek v. Soo Line R.R. Co., 440 F.3d 410, 413 (7th Cir.2006))).
It makes no difference under the circumstances of this case that Love is not a trustee as were the parties seeking to avoid estoppel in Reed and Kane. For our purposes, his role as essentially a debtor in possession puts him in an analogous position to a trustee.[11] It follows that because the claim is the property of the estate, and the estate has not been administered, judicial estoppel should not apply to bar relief that would benefit creditors. See Kane, 535 F.3d at 387. The debtors in Kane were virtually indistinguishable from Love in his position as debtor. While the Kanes’ lawsuit was pending in state court, they filed a Chapter 7 bankruptcy. 535 F.3d at 383. That bankruptcy resulted in a no-asset discharge. Id. It was not until a summary judgment motion was offered, arguing that judicial estoppel should apply, that the Kanes filed a motion to reopen the bankruptcy so the Trustee could administer the previously undisclosed lawsuit. Id. We reversed the district court’s summary judgment application of judicial estoppel, holding that equity did not compel barring the trustee from acting on behalf of the estate. Id. at 387-88. Indeed, we even highlighted the possibility that the debtors may recover in the event of surplus. Id. at 387.
It is true, as the majority opinion points out, that the claims in Reed and Kane were pursued by “innocent Chapter 7 trustees, and not by the debtors themselves.” But Love’s role as both debtor and protector does not make the analogy any less apt. The only real implication of the majority opinion’s distinction is that the trustees in Reed and Kane were “innocent.” This distinction is irrelevant, however, because the debtors in those cases were in the same position as Love, and the characterization of the trustee’s role as “innocent” has nothing to do with the imposition of judicial estoppel where that trustee’s duty, imposed post-disclosure, is to act on behalf of the estate.
Reed and Kane — where creditors stand to be harmed in the event judicial estoppel is imposed — bind us here. In contrast, the cases relied upon by the district court and the majority opinion — In re Coastal, Jeth-roe, and In re Superior Crewboats — do not involve application of judicial estoppel to the detriment of the estate’s creditors, and should not have been the basis for the district court’s application of judicial estop-pel as an equitable remedy.[12]
*274 The majority opinion further attempts to distinguish Reed because there the district judge expressly held that the debtor would not share in any recovery. Nothing, however, prevents the judge in this case from doing the same.[13] In the similar context of sanctions for abusive litigation conduct, also evaluated under an “abuse of discretion” standard, we have cautioned courts not to use “death penalty” sanctions if less severe sanctions can be fashioned. See, e.g., United States v. $49,000 Currency, 330 F.3d 371, 376 (5th Cir.2003) (“[This] drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect.”); Smith v. Smith, 145 F.3d 335, 344 (5th Cir.1998). Unlike the district court in Reed, the district court here did not attempt to tailor the sanctions to make sure “only the guilty are punished” or otherwise determine if less severe sanctions were appropriate.[14]
Finally, Reed highlighted the equitable nature of this analysis in light of the bankruptcy forum in which we find ourselves. Therefore, we must
apply judicial estoppel ‘against the backdrop of the bankruptcy system and the ends it seeks to achieve.’ These ends are to ‘bring about an equitable distribution of the bankrupt’s estate among creditors holding just demands,’ .... Therefore, judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor’s estate.
Reed, 650 F.3d at 574 (citations omitted).
In this case there were (and are) other avenues for discouraging potentially deviant bankruptcy litigants. We noted two of them in Reed: “revoking [or denying, as the case would be here] the debtors’ discharges and referring them ... for criminal prosecution.” Id. at 576 (quoting Biesek, 440 F.3d at 413). Perhaps more importantly, the resolution here has no deterrent effect. Judicial estoppel would *275 not prevent a future litigant under like circumstances from defrauding the court because it penalizes the litigant’s creditors — not the litigant.
To whatever extent Love may have intended to make illicit use of funds that belong to the estate, judicial estoppel is an inappropriate remedy where it will inhere to the detriment of Love’s creditors. In Reed, we highlighted Judge Easterbrook’s eloquent analysis of this problem:
[The debtor’s] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his [tort] claim would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [the debt- or] has been doing behind their backs. Creditors gypped by [the debtor’s] maneuver are hurt a second time by the district judge’s decision. Judicial estop-pel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.
Reed, 650 F.3d at 576 (quoting Biesek, 440 F.3d at 413).
Exercising discretion in granting judicial estoppel must be done only when the remedy does not do “inequity in the name of equity.” 27A Am.JuR.2d Equity § 84 (2012); see also Krystal Cadillac-Oldsmobile GMC Truck, Inc., 337 F.3d 314, 319 (3d Cir.2003) (“[A] district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant’s misconduct.” (citation and internal quotation marks omitted)). A judicial estoppel remedy here that allows Tyson to win based upon “bad conduct” in a case to which it was not even a party would merely transform an alleged windfall for Love into an inevitable windfall for the alleged wrongdoer Tyson — at the expense of Love’s creditors.

III. Conclusion

Unlike the litigants in our prior decisions concerning judicial estoppel, Love gains no potential legal advantage from his failure to disclose the claim against Tyson to the bankruptcy court. As Love explained to the district court — albeit somewhat ineloquently — the recovery sought against Tyson would aid his creditors, not defraud them. In this vein, Tyson has not established Love’s motive to conceal. Our precedent counsels against judicial estop-pel in these circumstances.
Moreover, the court’s equitable discretion must be used against the backdrop of the bankruptcy system and the goals it espouses. The outcome affirmed by the majority opinion does not further those goals — either in dissuading future deviant bankruptcy litigants or in protecting third party creditors’ rights. At the very least, the remedy espoused in Reed could be utilized here in preventing unnecessary harm to creditors while preventing an allegedly deviant debtor from “playing fast and loose” with the courts.
None of the above represents some effort to “change the law.” Rather it seeks to hold alleged tortfeasors who would reap an admitted windfall to their summary judgment burden of proof. Further, while judicial estoppel certainly should be available in some circumstances, it should not be mechanically applied. It is an equitable doctrine, demanding nuance, not absolutes.
The majority opinion discusses a very real concern, that debtors may defraud the bankruptcy system by failing to schedule their claims. Using judicial estoppel to curtail this potential problem, however, is *276 not the answer under all circumstances. There are other legal avenues to punish, and obtain relief from, fraudulent debtors without imposing a windfall on an alleged tortfeasor to the detriment of innocent creditors.
Accordingly, I respectfully dissent.

. The majority opinion correctly notes that application of judicial estoppel is reviewed under the abuse of discretion standard. We have used that standard even in summary judgment cases without much analysis of the rationale for doing so. See, e.g., Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 600 (5th Cir.2005). We are certainly bound by those cases, and I do not contend otherwise here. I simply note that the reasons for abuse of discretion as the standard make little sense here where summary judgment was granted on the papers and the judicial estoppel concerns a proceeding with which this district judge was not involved. Cf. Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 30-31 (1st Cir.2004) (giving reasons for application of abuse of discretion to judicial estop-pel that include the idea that "determining whether a litigant is playing fast and loose with the courts has a subjective element. Its resolution draws upon the trier’s intimate knowledge of the case at bar and his or her first-hand observations of the lawyers and their litigation strategies” and that abuse of discretion is a “flexible standard.”). The district judge here had no "intimate knowledge” of the case at bar or any "first-hand observations” to guide the decision. Indeed, this case was filed in state court on March 12, 2009, removed in April of 2009 and the summary judgment in question was filed in July of the same year before anything else had happened in the case; the case was stayed pending determination of the motion, which occurred without an oral hearing.

. Indeed, in Reed, 650 F.3d at 575-79, and Kane, 535 F.3d at 386-88, we did not even address the elements, but rather found judicial estoppel would not apply based on, inter alia, principles of equity and the particular circumstances of each case.

. Our case law treats as irrelevant the question of whether the debtor knew of his disclosure or supplementation obligations or otherwise understood that an inchoate claim was a disclosable asset. See, e.g., In re Coastal, 179 F.3d at 212.

. That section provides, with limited exceptions not applicable here, that "all legal or equitable interest of the debtor in property as of the commencement of the case” are property of the estate. § 541(a)(1). "The term ‘all legal or equitable interests' has been defined broadly to include causes of action.” Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Trust), 25 F.3d 1281, 1283 (5th Cir.1994). It is immaterial to § 541(a)(1) whether a particular asset — such as a cause of action- — is scheduled. See Wieburg v. GTE Sw. Inc., 272 F.3d 302, 306 (5th Cir.2001).

.See Harris v. Wash. Mut. Home Loans, Inc. (In re Harris), 297 B.R. 61, 72 (Bankr. N.D.Miss.2003).

. Every circuit to have considered the question has held that the "rights and powers" that the Chapter 13 debtor enjoys under § 1303 include the power to sue on claims that are property of the estate on behalf of the estate. See, e.g., Smith v. Rockett, 522 F.3d 1080, 1081 (10th Cir.2008) (collecting cases). As the Seventh Circuit explained, “[t]he chose in action, here a discrimination case, belongs to the estate and was being prosecuted for the benefit of its creditors. It would frustrate the essential purpose of [§ ] 1306 to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit [of] the estate.” Cable v. Ivy Tech State Coll., 200 F.3d 467, 473 (7th Cir.1999). That is precisely the case here.

. The majority opinion condemns Love for framing his argument based on the Supreme Court's three-prong test, which differs slightly from that set out by our precedent. See New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808. The majority opinion states that New Hampshire’s third prong — "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped” — is an entirely different issue than Love's motive at the time of nondisclosure. I agree that motive must be viewed at the time of nondisclosure, rather than after a defendant asserts its judicial estoppel defense. I cannot agree, however, that these issues are entirely distinct.
Indeed, other circuits have introduced the theory of inadvertence into New Hampshire’s third prong, indicating that the two ideas are not entirely separate. See, e.g., Stallings v. Hussmann Corp., 447 F.3d 1041, 1048 (8th Cir.2006); Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir.1996). Moreover, in propounding the third consideration, the Court in New Hampshire cited language indicating that judicial estoppel forbids use of “intentional self-contradiction ... as a means of obtaining unfair advantage.” 532 U.S. at 751, 121 S.Ct. 1808 (emphasis added).

. I disagree with the majority opinion's reasoning that Love provided no basis for concluding that the nondisclosure was inadvertent. The majority opinion discounts Love’s argument because he made it only after Tyson brought the nondisclosure to light. This will be the case every time a debtor inadvertently fails to disclose until notified of his obligation at summary judgment.
If Love's explained lack of motive is insufficient to create a fact issue as to inadvertence, I am concerned as to what would be required. Setting aside the unfairness in crediting the defendant's blanket allegation while discounting the plaintiff’s blanket denial, the majority opinion’s approach effectively creates a presumption in favor of the defendant asserting the affirmative defense. A defendant would simply need to allege knowledge and motive, while the plaintiff needs to prove the negative — that he lacked motive. How would he do so? By filing an affidavit that says "I didn't mean it” or "I had a pure heart”? Would the majority opinion find that type of affidavit useful or appropriate? Moreover, to the extent that the majority opinion contends that this case should be about subjective intent, Tyson put on no evidence about Love’s mental state and, therefore, did not satisfy its summary judgment burden.

. Indeed, a debtor like Love would be presumed to have fraudulent intent simply from nondisclosure itself — where “knowledge” is a given, and "motive,” according to the majority opinion is "self-evident.” The Third Circuit confronted this issue in Ryan Operations, where the court stated:
[P]olicy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding. Such a rule would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies. While we by no means denigrate the importance of full disclosure or condone nondisclosure in bankruptcy proceedings, we are unwilling to treat careless or inadvertent nondisclosures as equivalent to deliberate manipulation when administering the strong medicine of judicial estoppel.
81 F.3d at 364-65 (citations and internal quotation marks omitted).

. In re Coastal can be further distinguished based on the extensive evidence of intentional concealment. 179 F.3d at 213 ("[The debtor] avoided paying its debts by filing bankruptcy. Yet [a company], formed by [the debtor's] CEO, purchased [the debtor's] assets, including the undisclosed $10 million claim ... for only $1.24 million ... then obtained a net judgment of $3.6 million.”); see also Kane, 535 F.3d at 387 (highlighting this distinction).

. “The debtor in possession performing the duties of the trustee is the representative of the estate and is saddled with the same fiduciary duty as a trustee to maximize the value of the estate available to pay creditors.” Cheng v. K & S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 455 (9th Cir.BAP 2004), aff'd, 160 Fed.Appx. 644 (9th Cir.2005) (unpublished). Though "debtor in possession” is a Chapter 11 term of art, " 'the Chapter 13 debtor has been considered analogous to Chapter 11, which grants the debtor full authority as representative of the estate typical of a trustee.’ ” Rockett, 522 F.3d at 1082 n. 2 (quoting Cable, 200 F.3d at 472).

. Judicial estoppel is an “extraordinary remedy” to be invoked in order to stop a "miscarriage of justice”; it is not a "technical defense *274 for litigants seeking to derail potentially meritorious claims.” Ryan Operations, 81 F.3d at 356. The bankruptcy panel in In re Cheng highlighted that regardless of the application of the judicial estoppel factors to a particular litigant, judicial estoppel remains an equitable remedy and must be applied so as to avoid inequity. 308 B.R. at 458-49 ("This is a different matter that has generally been ignored in reported decisions.”). "Thus, regardless of whether technical equitable rules and distinctions are controlling, the rich lore of equitable principles cannot be ignored.” Id. at 459.

. The majority opinion's point that Love's plan was not amended to provide that his creditors would be paid out of any recovery is a red herring. There is nothing to prevent a court in equity from requiring Love to pursue plan modification, or simply precluding Love from any personal recovery on a potential judgment.

. In footnote 4, the majority opinion posits that the district court could have concluded that such tailoring would be unhelpful here. However, there is no indication here that the district court did any such analysis. The majority opinion says that no such argument was made to the district court or here. That is unsurprising since Reed was not decided until well after the briefing to the district court and this court. My point here is simply that the district court decided something that should be a matter of equity and nuance on summary judgment without a full consideration of equity or nuance. In response, the majority opinion has imagined a line of thinking not engaged in by any of the other participants — the district court or the litigants. Rather than having the appellate court substitute its own judgment for the district court, the proper approach would be to remand for consideration in the first instance by the district court of whether tailoring of some kind could be done here to achieve a more equitable result.